23 C.C.P.A. (Patents)

## In re GARCIA.

### Patent Appeal No. 3596.

Court of Customs and Patent Appeals.

April 20, 1936.

LENROOT, Associate Judge, dissenting in part.

———◆———

Charles L. Sturtevant, Jr., of Washington, D. C. (Charles McC. Chapman, of New York City, and Eugene G. Mason, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The appellant has here appealed from the decision of the Board of Appeals of the United States Patent Office which affirmed that of the Examiner in rejecting claims 8, 14, and 18 to 37, inclusive, being all of appellant's claims in an application for a patent for an improvement on air brake controlling mechanism. Claims 8, 18, 30, 32, and 36 are regarded as illustrative and follow:

"8. In combination with a fluid brake system having a slide-valve and chamber, an automatically operating device associated with but independent of said valve and chamber for maintaining control of the system, and a single brake valve for setting the slide valve in operation and simultaneously energizing the said device."

"18. In combination with the triple valve mechanism of a pneumatic brake system, an attachment in the form of a controller for said valve mounted on the exterior of the valve casing and having a plurality of passages communicating directly with the chamber of the triple valve substantially as described."

"30. In combination with a pneumatic brake system, including a slide valve and a chamber in which it works, a controlling means mounted on the casing of the slide valve and operating automatically for setting .itself and for maintaining control of the system, said means including a plurality of passages communicating with the slide valve chamber, and a valve forming part of said means for controlling certain of said passages to open and close the' same according to conditions in the system."

"32. In combination with the triple valve ·mechanism of a pneumatic brake system, an attachment in the form of a controller for said valve mounted on the exterior of the valve casing and having a plurality of passages communicating with the chamber of the triple valve, and a vent in·communication with one of said passages enabling the controller to reduce the brake-cylinder pressure correspondingly with the car load."

· "36. In combination with the ordinary mechanism of a fluid brake system including a slide-valve and chamber, an automatically operating controlling device applied to said valve chamber for retaining the brakes in active application until the equipment is fully recharged, a plurality of passages between the controlling device and valve chamber, and a single brake valve for setting the slide-valve in operation and simultaneously energizing the said device."

The sole reference relied upon is Juul, 570,483, November 3, 1896. Other references were cited during the prosecution of the application, but, by reason of the change made in the claims, both tribunals finally rested their decisions upon Juul alone.

The details of applicant's device are quite complex, requiring several pages of description by the Examiner. In view of our conclusions here, we do not think it necessary to describe the invention in great detail, and think it will be understood by here copying a portion of its description by the Board.

"The subject matter of the appealed claims is that of an attachment in combination with the conventional 'triple valve' mechanism of railway air-brakes to enable the storage supply reservoirs on all of the cars to be replenished while the brakes are in an 'on' or applied condition. It is pointed out in the record that in descending very long grades where the brakes would be continuously applied for a long time that the storage reservoirs on the cars might become exhausted due to more or less leakage in the braking cylinders and the repeated drawing of portions of these supplies to maintain the brakes in the 'on' position and that in such case in the ordinary system if unmodified and unadjusted for the particular grade, if the engineer attempts to replenish the storage reservoirs on the cars it results in releasing all of the brakes. This happens because when the engineer attempts to return air pressure through the air pipes to supply pressure to the storage reservoirs it shifts the triple to position to release the brakes.

"Applicant has provided an attachment which in terms of the drawing is indicated by numerals 25 to 35 whereby. the release of the brakes will be prevented upon return of air pressure through the train pipe from the locomotive and hence such pressure will not immediately release the brakes thereby permitting replenishment of the storage reservoirs on the cars while the brakes are still on. This attachment is in the nature of a differential pressure actuated device which permits replenishment of the air supply but which will not interfere with the use of the brakes in the ordinary way or the ordinary emergency application of the brakes. This difference in operation is under the control of the engineer's brake control valve. Applicant claims that it is now customary on very long grades for trainmen to individually manually adjust the triple valve of each car before descending the grade with the view of avoiding the danger of running out of air."

At one time before the Examiner, four claims, 8, 9, 10, and 11, were allowed. Of these, claim 8 was amended, after rejection, to read in its present form. The other three claims were canceled after amendment and rejection, and claims 34, 35, 36, and 37 were added to the application.

It will not be necessary for us to apply the reference to appellant's device in all its details. The Examiner has done so on several occasions, and the Board has also somewhat briefly discussed the reference and its relation to appellant's application.

The Examiner rejected all the claims except claims 14, 21, 32, and 33 as reading

upon Juul, and rejected claims 14, 21, 24, 32, and 33 as not warranted by the disclosure. Claims 26 and 27 were, by the Examiner, also rejected as being indefinite and claim 31 on the ground of being inaccurate. The Board did not expressly disapprove of any of the grounds of rejection of the Examiner, and specifically rejected all the claims, except claims 32 and 33, as reading upon Juul. The Board rejected claims 32 and 33 on the ground of containing new matter.

The record shows that on frequent occasions the Examiner called the applicant's attention to the fact that he regarded Juul to be a complete anticipation for everything in the application except "a most limited sort of claim," which, according to the record, was never presented. The Examiner states that, when such suggestions were made to the applicant, he responded with broad claims which either read upon Juul or which were objectionable as is hereinbefore pointed out, and that every time such suggestion was made appellant again attempted to convince the Patent Office that he had a "broad" invention, and there, as here, contended that, since most of his claims, such as claim 24, recite, "an automatic controlling device, independent of but interacting with said piston and valve, said device having means for insuring the proper action of the system at all times," and since the Juul structure is not automatic and does not have the "maintenance of pressure" feature, all appellant's claims are, for this reason, allowable.

The Board, in discussing appellant's alleged invention, states:

"While the details of applicant's device are somewhat complex it is observed as the Examiner points out that the claims here on appeal do not include any limitations of such nature but are directed rather very broadly to the conception of applying the supplemental device to the triple valve and attaching it physically to the valve casing, that is, in effect making it integral with such valve casing.

"It appears that applicant is not the first to propose an accomplishment of the function of recharging the storage reservoirs while the brakes remain engaged. The patent to Juul sets forth fully and clearly an air-brake system in which this function may be accomplished and Juul's device is thoroughly automatic and under the control of the engineer. Juul's mechanism is however not directly physically attached to the triple valve but is diagrammatically indicated as being mounted in the immediate neighborhood thereof and at least on the same car with the triple valve and connected thereto by more or less extended tubes B and B⁴. Juul broadly refers to these tubes merely as pipes to connect the delay device with the triple valve. Obviously they could be very short and in effect amount to connection of the attachment to the triple valve.

"The Examiner has very fully and carefully analyzed the structures shown by applicant and by Juul and points out that there are differences and that in applicant's device the operation of the delay or retainer valve mechanism is dependent upon the pressure in the auxiliary storage reservoir and that it continues to act until pressure is rebuilt in the reservoir whereas in Juul's device action is dependent upon the retarding effect of a dashpot which would act at definite fixed intervals independent of the air pressure in the auxiliary reservoir but the claims have not developed any features relating to this differentiation.

"Concerning the terms of the claims we find that claim 8 requires in combination first a fluid brake system with a slide-valve and chamber. In Juul we have the same type of air-brake system and it embodies a slide-valve A-B-1 and a chamber as shown in which it operates. The claim further includes an automatically operated device associated with but independent of said valve and chamber for maintaining control of the system. This is the mechanism shown generally at C and D of Juul. This includes the dashpot, time delay device which accomplishes a result equivalent to that of applicant's device within the scope of the appealed claims even though it may operate according to a fixed time interval rather than according to pressure in the auxiliary reservoir. The expression, 'associated with but independent of' clearly reads directly upon Juul in the same sense that it does on applicant's device even if not more directly. The claim further requires a single brake valve for setting the slide valve in operation and simultaneously energizing the said device. This is no more than the engineer's control valve which would be at the head of the train pipe in the conventional way the same as it is at the head of the train pipe in applicant's system.

Claim 14 is even broader in expression that claim 8 in requiring only a controlling device for the system which would be the parts C and D of Juul."

The other claims in the application are discussed by the Board briefly.

We approve of the grounds of rejection applied by the Board which are substantially the same as those applied by the Examiner. We think the claims, except claims 32 and 33 (which will be discussed later), are not patentable over Juul. In view of all the circumstances in this case, patentability could not rest upon the mere statement that in appellant's device certain things were done automatically without disclosing the novel inventive automatic means.

In Re Rundell, 48 F.(2d) 958, 959, 18 C.C.P.A.(Patents) 1290, it was said:

"The mere statement that a device is to be operated automatically instead of by hand, without a claim specifying any particular automatic mechanism, is not the statement of an invention [citing authorities]."

It is true, as appellant has pointed out and cited many authorities in support thereof, that, where appellant has been allowed broad claims and the application is out of the Patent Office, the courts will so interpret broad claims as to give a patentee adequate protection.

We agree with the Solicitor for the Patent Office that, while the application is before the Examiner and when the applicant's attention is called to the fact that he is claiming too broadly, he should not afterwards complain if the claims are properly rejected on the ground that they are so broad in character as to read upon the prior art.

In Re Buckwalter, 75 F.(2d) 515, 22 C.C.P.A.(Patents) 1031, we said:

"As has been so often said, the claim is the measure of the invention, and, if appellant's claims were so broadly drawn as to read upon the prior art, we know of no rule which would authorize the tribunals of the Patent Office, or the courts to read limitations, based upon extraneous arguments, into them."

In Re Horton, 54 F.(2d) 961, 964, 19 C.C.P.A.(Patents) 871, we quoted with approval from In re Carr, 54 App.D.C. 270, 296 F. 1017, as follows:

"After a patent has issued, and it no. longer is possible· for the patentee to control the phraseology of his claims, the courts will so interpret them, if possible, as to protect him; but there is no reason as we many times have observed, why an applicant in the Patent Office should not draw his claims to cover his actual invention only. For this reason we have uniformly ruled that claims will be given the broadest interpretation of which they reasonably are susceptible. This rule is a reasonable one, and tends not only to protect the real invention, but to prevent needless litigation after the patent has issued."

Appellant has not attempted to point out where his claims, except claims 32 and 33, distinguish over the Juul patent except by the use of the broad language which we have hereinbefore discussed.

Now as to claims 32 and 33, which were rejected as being based upon new matter, we are also in agreement with the Patent Office tribunals that they were properly rejected. These two claims include reference to a vent in communication with one of the passages of the controlling device, enabling the controller to reduce the brake cylinder pressure correspondingly with the car load. In figure 6 of appellant's drawings, there is a dotted line which extends. upward through a portion of appellant's mechanism and terminates at a letter "x." No reference is made to the same in the specification as originally filed, and descriptive matter concerning this detail was first introduced. by amendment long after the application was filed. Said claims 32 and 33 were likewise introduced at the same time. The newly added descriptive matter alleges that the vent was intended for the placing therein of a reducing valve which could be manually adjusted to reduce brake-· cylinder pressure. The Board found that, while the device might work in the way claimed, it was not believed that such result would be obvious from an inspection of the original drawings only.

We concur in this view of the Board that the rejection of said claims 32 and 33 upon the grounds of new matter was entirely proper.

The decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, Associate Judge, dissents as to claims 32 and 33.