35 C.C.P.A. (Patents)

### Application of GARDNER.

### Patent Appeal No. 5332.

Court of Customs and Patent Appeals.

Nov. 17, 1947.

Pennie, Edmonds, Morton & Barrows, of New York City (Daniel Stryker and W. P. Epperson, both of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. B. Ledman and J. Schimmel, both of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 1, 2, and 3 in appellant's application for a patent for alleged new and useful improvements in a process for producing high quality motor fuel and for the product obtained by that process. No claims were allowed.

The references are: Birch et al. High-Octane Isoparaffinic Fuels, Ind. and Eng. Chem., pp. 884–891, July, 1939; Grosse 2,167,650 Aug. 1, 1939; Kemp et al. 2,172,-560 Sept. 12, 1939; Goldsby 2,341,863 Feb. 15, 1944.

Appellant has moved to dismiss the appeal as to claim 3, drawn to the product. That motion will be granted, thereby limiting the appeal to the remaining claims 1 and 2, drawn to the process. They read:

"1. The process of producing high quality motor fuel which comprises subjecting isobutane containing stock substantially free from butylene-1 and butylene-2 to dehydrogenation forming a mixture containing isobutane and isobutylene in proportions approximately five parts of the former to one of the latter and subjecting the mixture so obtained to an alkylation operation in the presence of strong sulphuric acid under conditions favorable to alkylation.

"2. The process of producing high quality motor fuel which comprises dehydrogenating isobutane to form isobutylene, and

in the substantial absence of butylene-1 and butylene-2 alkylating isobutane with isobutylene so derived in the presence of strong sulphuric acid under conditions favorable to alkylation."

A comparison of the involved claims discloses that the dehydrogenating step in claim 1 is so regulated as to form "a mixture containing isobutane and isobutylene in proportions approximately five parts of the former to one of the latter." Claim 2, according to appellant's brief, "is somewhat more broadly drawn, in that it does not require any regulation of the dehydrogenating step to insure that there will be a relatively large proportion of unreacted isobutane in the products emerging from the dehydrogenating step."

The alleged critical factor in the disclosed process is the substantial absence of butylene-1 and butylene-2 in the mixture during alkylation. That is specifically recited in claim 2. In claim 1, the use of isobutane substantially free from butylene-1 and butylene-2 in the dehydrogenation reaction is said to produce isobutylene containing only a trace of isobutylene-1 and isobutylene-2. If the isobutylene so obtained admixed with the original unconverted isobutane is subjected to alkylation conditions, the higher octane product is said to be produced. To that extent, with respect to the limitation upon the absence of butylene-1 and butylene-2 from the alkylation reaction, the claims are essentially of the same scope.

The blended product obtained in carrying out the process defined by appellant, according to his specification, will have "an octane number of 97 to nearly 100, and with the addition of tetraethyl lead, may have antiknock properties greatly superior to those of the known 100 octane aviation fuels."

The patent to Grosse specifically teaches the operation of the dehydrogenation of isobutane to form isobutylene. As described in Fig. 1 of the drawing, at least 90 per cent of the butylenes so produced are isobutylene. The patentee states that the products of the dehydrogenation reaction may be "caused to alkylate other hydrocarbons such as aromatics or paraffins * * * to produce desirable and commercially valuable derivatives."

Therefore, according to the examiner's statement, the patent to Grosse discloses that it is old in the art to dehydrogenate isobutane to form isobutylene and, in the substantial absence of butylene-1 and butylene-2, to alkylate paraffins.

The patent to Grosse does not describe the alkylating of isobutane with the isobutylene derived from the dehydrogenation reaction in the presence of strong sulphuric acid as defined by the claims on appeal. However, each of the other three references relied upon by the examiner, Birch et al., Kemp et al., and Goldsby, shows that the alkylation of isobutane by means of olefins in the presence of strong sulphuric acid as the catalyst is likewise old in the art.

The examiner took the position that since in common commercial practice isobutane is generally the paraffin alkylated and strong sulphuric acid is the alkylation catalyst generally used, it was obvious to use the isobutylene product of the dehydrogenation reaction for the alkylation of paraffins in general as suggested by Grosse to the alkylation of isobutane in particular in view of each of the other three references.

Considering the patent to Grosse as a supplementary reference, the examiner likewise held that it would involve no invention to employ the mixture of the dehydrogenation reaction of that patent as the mixture subjected to the alkylation process disclosed by each of the other three references.

Fig. 1 of the drawing of the patent to Grosse shows that by appropriate control of the time of contact and temperature in an operation for dehydrogenating isobutane the ratio of isobutane to isobutylene for the alkylating operation may be fixed at a desired value including the ratio of 5 to 1. The range of proportions of isobutane to the olefin in a sulphuric acid alkylation process as disclosed by the patent to Goldsby also includes the ratio of five to one.

It would not therefore amount to invention, according to the examiner, to control the reaction conditions in the dehydrogenating process as taught by Grosse to give a ratio of 5 to 1, or a desired ratio, of isobutane to isobutylene and to subject

the mixture so obtained to the sulphuric acid alkylation operation disclosed by Goldsby.

The Board of Appeals affirmed the decision of the examiner and in so doing explained why it considered the appealed claims unpatentable over the references relied upon by the examiner. Admittedly, some confusion herein has been created by the board, particularly in its use of technical terms, but, as pointed out by the Solicitor for the Patent Office, such confusion relates to matters not material to the involved issue.

Appellant states in his brief that the dehydrogenating operation employed by him in the first step of his process is of a type that has for a considerable length of time been well known, as disclosed by the patent to Grosse; and that the alkylation operation employed by him in the second step of his process of itself follows conventional practice so far as manipulative procedure is concerned. The only exception that appellant makes is that the alkylation operation be conducted under enumerated conditions favorable to alkylation, all of which conditions he points out are well known and are in no respect different from the well known practice.

Appellant argues that an important difference between his process and the processes of the prior art, is "that appellant's process utilizes, as raw material, a purified *isobutane only * * *.*" (Italics quoted.)

The Solicitor for the Patent Office points out, however, that "The various hydrocarbons, including the olefins in question, are available as pure compounds," and argues that the fair inference to be drawn from the record is that the authors of the article by Birch et al. in describing the alkylation of the hydrocarbon, isobutane, in the presence of sulphuric acid, and that Grosse in describing the dehydrogenation of isobutane to form isobutylene, employed the term "isobutane" in its natural meaning to define the pure compound.

Moreover, the law is well settled that "where an old method or process is used by an applicant in the administration of a new and analogous material, and the improved result is due solely to the quality of the material used, no inventive method or patentable process is involved in what the applicant has done." See In re Saunders et al., 154 F.2d 693, 694, 33 C.C.P.A. (Patents) 1001, 1004, and authorities therein cited.

The record does not establish any definite meaning or measure for the limitation "in the substantial absence of butylene-1 and butylene-2" employed by appellant in each of the respective claims. It is suggested in appellant's brief, as hereinbefore described, that the expression means "at best no more than the merest trace of butylene-1 and butylene-2."

However, there is no definition to that effect in his specification and there is nothing in the record to show that the involved limitation does not read upon the disclosure in the patent to Grosse in the same sense as it does upon appellant's disclosure.

Referring to a quotation contained in the publication by Birch et al., appellant alleges that he discovered that the authors thereof were in error in stating that: "Substitution of normal butenes, either 1- or 2-butene, for isobutene in the reaction with isobutane was without marked effect upon the boiling range or octane number of the gasoline produced."

Be that as it may, the reference does disclose the alkylating of isobutane in the presence of sulphuric acid and the use of isobutylene as the alkylating olefin, and, according to the examiner, with results similar to and not patentably distinct from those obtained by appellant.

The Board of Appeals in summarizing its position on the issue here presented stated: "* * * Since the principle of the process of alkylation to produce octane is well known and the use of isobutane and isobutylene as favored alkylating methods appears known it is our conclusion that the remainder of the matter set forth in the case does not go beyond range of simple and obvious tests within the skill of a worker in the art."

The court does not find that the decision of the Board of Appeals is manifestly wrong on the material issues here pre-

sented. For the reasons stated, the appeal as to claim 3 is dismissed and the decision of the Board of Appeals with respect to claims 1 and 2 is affirmed.

Affirmed.