37 C.C.P.A. (Patents)

**Application of KUNZ et al.**

**Patent Appeals No. 5644.**

United States Court of Customs and Patent Appeals.

Argued Nov. 14, 1949.

Decided April 3, 1950.

George B. Finnegan, Jr., and Hobart N. Durham, New York City (Thomas Cifelli,

Jr., Newark, N. J., James J. Dwyer, New York City, and Fisher & Christen, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C., (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of all the claims, eight in number, of appellants' application, serial No. 519,000, filed January 20, 1944, for patent entitled "For Germicidal Soaps Containing Halogenated Dihydroxy Diphenyl Methanes." Broadly the rejection seems to have been based upon lack of invention in view of prior art.

It appears that the application is a continuation in part of an application of appellants, serial No. 324,054, which was pending January 20, 1944, but which was later abandoned.

The claimed invention relates to germicidal detergent washing and toilet soaps, both solid and liquid, defined in the following claims:

"1. A germicidal detergent soap comprising soap and a minor proportion of 2, 2'–dihydroxy halogenated diphenyl methane.

"2. A germicidal detergent soap comprising soap and 1 to 3% of a 2, 2'–dihydroxy-halogenated diphenyl methane.

"3. A germicidal detergent soap comprising soap and minor proportion of 2, 2'–dihydroxy–3, 5, 6–3', 5', 6'–hexachloro diphenyl methane.

"4. A germicidal detergent soap comprising soap and 1 to 3% of 2, 2'–dihydroxy–3, 5, 6–3', 5', 6'–hexachloro diphenyl methane.

"5. A germicidal detergent soap comprising soap and minor proportion of 2, 2'–dihydroxy–3, 5–3', 5'–tetrachloro diphenyl methane.

"6. A germicidal detergent soap comprising soap and 1 to 3% of 2, 2'–dihy-

droxy–3, 5–3', 5'–tetrachloro diphenyl methane.

"7. A germicidal detergent soap comprising soap and minor proportion of 2, 2'–dihydroxy–3, 5–3', 5'–tetrabromo diphenyl methane.

"8. A germicidal detergent soap comprising soap and 1 to 3% of 2, 2'–dihydroxy–3, 5–3', 5'–tetrabromo diphenyl methane."

The following references were relied on in the rejections by the respective tribunals of the Patent Office:

| | | |
|---|---|---|
| Bruson, | 1,987,228, | Jan. 8, 1935; |
| Andersen, | 2,059,195, | Nov. 3, 1936; |
| Gump, | 2,250,480, | July 29, 1941; |
| Hartung, | 2,251,934, | Aug. 12, 1941; |
| Hartung, | 2,251,935, | Aug. 12, 1941; |
| I.G.F.A. (French), | 690,820, | June 30, 1930; |
| Lever Bros. (British), | 427,324, | Apr. 23, 1935. |

The claims are self-explanatory, and, as pointed out by the board, Nos. 2, 4, 6, and 8 are identical with Nos. 1, 3, 5, and 7, except that in the latter group "minor proportion" is used instead of "1 to 3%."

Claims 1 and 2 are generic claims. Claims 3 and 4 constitute the elected group of species claims, the Primary Examiner having required election. Claims 5 and 6 constitute the first nonelected group and claims 7 and 8 the second. The two latter groups were rejected by the examiner "as not readable on the elected species." The board said: "The rejection of * * * claim 5 through 8 as restricted to non-elected species, is affirmed."

The Primary Examiner rejected claims 1 to 4, inclusive, as lacking in invention, first, over the French patent; second, over the Gump patent; and, third, over either the Andersen patent or the British patent.

The examiner stated, with respect to the French patent, that it disclosed: "* * * that the compound 2, 2'–dihydroxy–3, 5–3', 5'–tetrachloro diphenyl methane is a well known germicide and bactericide. The French patent also discloses the dichloro derivatives of the compounds specified in claims 1 and 2."

We do not find the word "germicide" used in the patent, but "bactericides" is used along with "disinfectants." The product is said to be "capable of destroying microbes" and "capable of preserving objects from attack by microbes." Other recitations are the treatment of "infected objects or those in danger of being infected" and the impregnation of "bandages, etc. which will remain odorless after use" with the product named in examples recited in the patent.

A further recitation of the patent is: "We can preserve seeds by treating them with a mixture of di- or triphenylemthane products with talc. The seeds are not attacked by erysiphaceae (mildew), etc. Also we can avoid the formation of moisture spots, similar damages to textiles, papers, leather and wood, cosmetics, etc."

There is no suggestion that the product is capable of being used to produce a germicidal detergent soap.

The patent of Gump (one of the appellants in the instant case) discloses that the phenol, 2, 2'-dihydroxy-3, 5, 6, 3', 5', 6'-hexachloro-diphenyl methane is a white, practically odorless and tasteless solid crystalline compound; that it exhibits antiseptic and disinfecting action against microorganisms particularly against bacteria of the type of staphylococcus aureus; and that it may be employed with substances such as tooth powders, tooth pastes, ointments, creams, and cosmetics. There is no suggestion in the patent of employing it to produce a detergent soap having germicidal properties.

In his statement the examiner says, relative to his rejection on the Andersen and British patents: " * * * The patents show soap containing a germicide and capable of killing bacteria of the type disclosed by applicants in accordance with standard tests. The germicides disclosed by Andersen and the British patent are characterized by low toxicity and retain their germicidal activity when incorporated in soaps. See page 3, first column of the patent to Andersen. The addition of other well known germicides having such properties to soap to produce a germicidal soap would not, in the opinion of the Examiner, involve invention over Andersen or the British patent."

The examiner did not recite in his statement the character of the germicide used in the Andersen and British patents. This was done by the board, however, in the following: "Andersen and the British Patent 427,324 disclose *mercurial compounds* that are germicides admixed with soap. As pointed out in the brief [for appellants] on page 15, mercurial germicides *have the disadvantage of cumulative toxicity on the user*. (Italics supplied.)

"This fact has caused much investigation to substitute a phenolic type of germicide in soaps for its germicidal action. By reference to Hampil, Journal of Bacteriology, volume XVI, pp. 287–300(1928) and by presentation of affidavits, appellants seek to establish that the incorporation of phenolic substances in minor proportion (e. g. 1–3%) in soaps so as to have both the detergent action of the soap and the germicidal action of the phenolic substance has long been recognized as desirable but that all such mixtures that have been tried and tested have either proven ineffective or but poorly effective probably due to some inhibiting action of the soap on the activity of the germicide."

The board then discussed the patent to Bruson, in which the use of octylphenols in soaps and oil is suggested but does not appear to be claimed, and the two Hartung patents, which disclose the incorporation of alkyl cresols in soaps of saturated fatty acids.

With respect to the octylphenols of Bruson, the board said: " * * * appellants have attempted to show that these phenols show a marked decrease in action in aqueous soap solutions and lose it entirely in dilutions of 1:500."

With respect to the Hartung patents, the board said that appellants argue "that ordinary soaps * * * contain appreciable amounts of salts of unsaturated fatty acids leaving a strong inference that the Hartung phenols would not function in the latter type of soaps to which appellants' claims are generic."

The board made no statement as to whether it regarded the Bruson patent and the Hartung patents as references of any real consequence in this case, and we have not the benefit of its view upon that matter, except as it may be inferred from the following statement in its opinion:

"For the purpose of this decision, it is assumed that the state of the art effective against this application is as follows: (a). The only completely effective germicidal soaps were those containing mercurial germicides. Such soaps had the drawback of a cumulative toxic effect of the mercurial compound. (b). It had long been recognized that a germicidal soap with a phenolic germicide present in minor proportion was highly desirable but that all knowledge at the time of the filing of this case indicated that such a composition was either ineffective or but poorly effective and that the general conclusion of those working in the field was that phenolic germicides would not function properly when admixed with soap in minor proportions. The above assumptions are made as being the most favorable ones to appellants under the facts of the case.

"Under the situation so evaluated, it is thought that the prior art clearly teaches the desirability of incorporating a minor proportion of a phenolic compound in a soap to render the same germicidal. Thus it follows that the prior art teaches all persons interested in germicidal soaps that as each new phenolic material is developed, and each phenolic material which had not heretofore been tried in a soap composition, should obviously be tested as a routine matter to determine whether or not it was effective. This being the case, no invention whatsoever is involved in trying out what the prior art clearly teaches should be tried and determining the degree of effectiveness."

We feel constrained to disagree with the concurring conclusions of the respective tribunals of the Patent Office.

From the record in the case, including the factual (not opinion) statements in the affidavits filed on behalf of appellants and, so far as pertinent, the several publications introduced in evidence, together with the statements in appellants' specification, we have no doubt that appellants, by the use of the particular compound defined in the claims, have produced a germicidal detergent soap—that is, a "composition of matter" to use the statutory phraseology—which is entirely new and very useful. We think the product is the result of invention.

It is true, of course, that the compound used by appellants is a patented product (the Gump patent), but we are unable to discern why this fact should be regarded as even persuasive against the patentability of a composition of matter in which it is used as an ingredient.

We do not regard the Andersen and British patents disclosing the use of mercurial compounds as relevant references. The compound used by appellants is entirely different from the compound used by the patentees, and the soap product in which a mercurial compound is used is not suitable for use for the same purposes as the soap defined in the claims on appeal.

From what hereinbefore has been stated relative to the Bruson patent and the Hartung patents, it seems obvious that there should be no rejection of the appealed claims on these patents.

We are satisfied that appellants present in their application not only a useful composition of matter but a composition, which, although long desired, had not been produced until appellants produced it. Their production of it may have followed many experiments, but we have never understood that experimentation, study and labor, of themselves, destroyed inventiveness.

In our opinion, all the claims on appeal should be allowed.

The decision of the board is reversed.

Reversed.