38 C.C.P.A. (Patents)

## Application of CRAIGE.

Patent Appeal No. 5788.

United States Court of Customs and Patent Appeals.

May 8, 1951.

Rehearing Denied June 26, 1951.

John W. Lee, Jacksonville, Fla., for appellant.

E. L. Reynolds, Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 8, 9, 10, and 13 to 18 inclusive, in appellant's application, serial No. 592,729, for patent on alleged new and useful improvements in "Anthelmintic Compositions." No claim was allowed.

Claims 9, 10, 14, and 17 were rejected as being drawn to non-elected species and, therefore, need not be considered here on their merits. In re Vincent, 159 F.2d 877, 34 C.C.P.A., Patents, 936.

The application relates to a new class of anthelmintic compositions for veterinary use, appellant having discovered that when a particular group of substances were brought into contact with tapeworms in

the alimentary tract of domestic animals the tapeworms were killed and eliminated in the feces. The substances involved are amply defined in the claims, which may be classified into three groups, of which the following are representative:

"8. A veterinary anthelmintic composition containing as an essential active ingredient 2,2′ dihydroxy 5,5′ dichlorodiphenylmethane and a carrier therefor.

"13. A veterinary anthelmintic composition containing as an essential active ingredient 2,2′-dihydroxy-5,5′-dichlorodiphenylmethane and a solid carrier therefor and in the form of a compressed tablet.

"18. A method for combating intestinal parasites of domestic animals and poultry animals which comprises contacting said parasites in the alimentary tract of said animals with a substance represented by the following formula:

in which X represents a halogen selected from the group consisting of chlorine and bromine wherein said halogen substituents are arranged symmetrically and n′ is a small whole number from the group consisting of 1, 2, 3 and 4."

All of the claims, save those drawn to non-elected species, were rejected as unpatentable over the following prior art:

| | | |
|---|---|---|
| Hardy | 1,658,719 | Feb. 7, 1928 |
| Weiler et al. | 1,707,181 | Mar. 26, 1929 |
| Konantz | 1,839,970 | Jan. 5, 1932 |
| Miller et al | 2,280,340 | Apr. 21, 1942 |
| Gump et al. | 2,334,408 | Nov. 16, 1943 |

Cade, "Soap and Sanitary Chemicals," Vol. 20, February 1944, pp. 111–115.

The Gump et al., Weiler et al. and Cade disclosures show that the claimed compounds were known prior to appellant's work with them. The Gump et al. patent is directed to a process for making chlorinated phenol-aldehyde condensation products. The Weiler et al. patent discloses a condensation product from P-halogenated phenolic compounds and aldehydes and a process for making the same. The Cade publication treats of halogenated hydroxydiphenyl methanes as disinfectants, indicating that they are excellent germicides and are nontoxic. Each of these references discloses solvents for the compound of which it treats.

Appellant concedes that the Gump et al., Weiler et al. and Cade references disclose some of the chemical compounds employed as the essential active ingredient in appellant's compositions of claims 8, 15, and 16. Since claim 13 contains the same active ingredient such concession would apply there also.

As to the claims of the first group, it is appellant's contention that the references do not disclose the use of such compounds to combat tapeworms, nor indicate that they could be combined with suitable carriers to produce effective veterinary anthelmintic compositions. Appellant further contends that the Patent Office has confused the terms *composition* and *compound,* his claims calling for a combination of the reference *compounds* with a carrier to form a new *composition.* Because, appellant contends, the cited references do not disclose *compositions* that are per se the equivalent of the claimed compositions, the rejection on the In re Thuau doctrine is erroneous. 135 F.2d 344, 30 C.C.P.A., Patents, 979. This rejection, affirmed by the board, reads as follows: "Claims 8, 15 and 16 are rejected as unpatentable over any one of Gump, Weiler or Cade who show applicant's compounds in various compositions and solvents, which would be carriers. Gump, Weiler and Cade specifically show 2,2′ = dihydroxy = 5,5′ = dichlorodiphenylmethane. Gump * * * shows alcohol, a carrier, with the compound. Weiler shows water, alkalis, and ligroin all of which are carriers with the compound. Cade shows water as a carrier. A claim for an old composition is unpatentable irrespective of the "new and unobvious use" set forth in the preamble. A composition which is old cannot be patented by setting forth a new use for the composition in the preamble of the claims. See In re Thuau, * * *."

We agree that the prior art showing of solvents for the involved compounds satisfied the broad term "carrier" used in the claims. It has been uniformly held that claims in a pending application will be given the broadest interpretation of which they are reasonably susceptible. In re Carr, 54 App.D.C. 283, 297 F. 542; In re Horton, 54 F.2d 961, 19 C.C.P.A., Patents, 871. In re Garcia, 82 F.2d 711, 23 C.C.P.A., Patents, 1065. The so-called Thuau doctrine was not a new principle laid down in that case, but was a restatement of the well established rule "that a patent for a new use for an old substance quite unchanged is not authorized by the patent laws." Appellant urges upon us the case of In re Kunz et al., 181 F.2d 239, 37 C.C.P.A., Patents, 943, wherein this court held that the fact that a compound had been previously patented would not preclude the issue of a later patent on a new composition of which it formed a major component. Since appellant has produced no new composition the case is inapposite.

The case of In re Benner et al., 174 F.2d 938, 941, 36 C.C.P.A., Patents, 1081, likewise relied upon, states the familiar principle that where an introductory phrase is not limited to indicating use but contributes an element to the claim, the phrase is necessarily a limitation upon the subject matter of the claim. See Kropa v. Robie et al., 187 F.2d 150, 38 C.C.P.A., Patents, ——. This court held in the Benner case that the introductory phrase "A ball mill lining element composed of" did not patentably limit the old composition which it introduced, and that the In re Thuau doctrine applied. The introductory phrase now before us, "A veterinary anthelmintic composition containing," is of the same nature, and constitutes no limitation on the subject matter of the claim. As this court said in the Benner et al. case: "* * * The phrase comprises the name of a product and is introductory. It does not contribute to the definition of any composition or any part of any composition. Whatever of limitation there may be about it is a limitation as to its use, and unfortunately or fortunately—we do not undertake to determine which—no provision has been made in the patent statutes for granting a patent upon an old product based solely upon discovery of a new use for such product. * * *"

With respect to claim 13, the sole claim in the second group, appellant makes the additional argument that the limitation "a solid carrier therefor and in the form of a compressed tablet" distinguishes the claimed subject matter over that of the prior art and renders the holding in the Thuau case inapplicable. While it is true that in certain cases invention might be present in a very slight alteration and the Thuau doctrine avoided, such alteration must always amount to more than mechanical or professional skill. In re Benner et al., supra. It was the examiner's position, which was affirmed by the board, that claim 13 was unpatentable over the compound per se because the limitations "solid carrier" and "compressed tablet" were insufficient to patentably distinguish the claimed composition. We can find no error in this holding. Certainly it cannot be inventive to merely take an old composition and put it into tablet form. Not only are tablets notoriously old as a form for administering medicines but they are likewise a well known manner of marketing many types of compositions later to be dissolved. Thus Webster's New International Dictionary, Second Edition, gives as one definition of "tablet": A flattish cake of compressed or molded solid matter, such as arsenic or soap.

Merely to form the instant prior art compositions into compressed tablet form for any reason whatsoever could hardly be called invention.

Claim 18, the only claim in the third group, is drawn to a method for combating intestinal parasites of animals by contacting the parasites in the alimentary tract of the animal with a specified composition. The examiner rejected this claim and the board affirmed on the ground that the actual method is old, as shown by any one of the patents to Hardy, Konantz, or Miller et al., and that the use of a new and analogous material did not render the old process patentable. In view of the refer-

ences it cannot be doubted that the steps of the process are old. It is further well settled that the substitution of a new and analogous material in an old method or process does not render the process patentable where the improved result is due solely to the quality of the material used. In re Saunders et al., 154 F.2d 693, 33 C.C.P. A., Patents, 1001, and the authorities cited therein; In re Gardner, 164 F.2d 363, 35 C.C.P.A., Patents, 753; In re Haney et al., 158 F.2d 296, 34 C.C.P.A., Patents, 767. The patents to Hardy, Konantz and Miller et al, disclose various compositions for use as anthelmintics in the same process as is claimed here. These compositions all possess the properties of being nontoxic and germicidal which the Solicitor for the Patent Office points out are the basic characteristics of materials suitable for use as anthelmintics. The patent to Hardy discloses the use of phenols as a constituent of his anthelmintic. The Primary Examiner and the board were of the opinion that the claimed compositions were analogous and invoked the rule of the Saunders case, supra. The Cade publication makes it clear that compositions such as those claimed here, which are homologues and analogues of phenol and its halogenated derivatives, are both germicidal and nontoxic. Thus the compositions used in the

method of claim 18 were known to possess the basic characteristics for combating internal parasites and were also known to be homologues and analogues of phenol, a component of Hardy's anthelmintic. In view thereof it appears that the claimed composition is analogous to the prior art compositions and that thus the doctrine of In re Saunders is applicable. The claimed method, being old per se and producing new results solely through the use of a new and analogous material, does not rise to the dignity of invention.

While it appears evident that appellant has made a definite advance in the veterinary field it is settled law that every improvement is not invention, In re Thayer, 159 F.2d 742, 34 C.C.P.A., Patents, 893, and that the attainment of comparative superiority over that which is already known does not of itself amount to invention. In re Lieser, 162 F.2d 224, 34 C.C. P.A., Patents, 1113.

Since the claimed compositions are old in the art, and since the claimed method differs from the prior art only in the use of an analogous material, the exercise of the inventive faculty is not indicated and the decision of the board must be and is, affirmed.

Affirmed.