25 C.C.P.A. (Patents)

## In re MASON.

### Patent Appeal No. 3884.

Court of Customs and Patent Appeals.
Feb. 7, 1938.

Roy W. Johns, of Chicago, Ill., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal involves a review of a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner rejecting all of the claims of appellant's application, eight in number, upon the grounds hereinafter stated. Claims 1 and 2 are method claims, and claims 3 to 8, inclusive, are apparatus claims. Claims 1 and 3 are illustrative of the claims before us, and read as follows:

"1. The method of separating the silicious and phosphatic constituents of oiled fine mineral phosphates which comprises supplying said mineral to a screen under water, said screen having holes larger than the greater part of the phosphatic constituents, and imparting relative motion to said screen and mineral, whereupon the silicious constituents °of the mineral pass through the screen and the phosphatic constituents thereof move along the screen under the water.

"3. In separating apparatus for separating the silicious and phosphatic constituents of oiled fine mineral phosphates, a container, a movable screen within the container, means for maintaining a liquid level above the screen, means for supplying material to be separated to the screen, and means for imparting motion to the screen to effect separation of the material into a constituent passing through the screen and the constituent passing over the screen, said screen having holes larger than the greater part of the constituent passing over the same."

The references cited are: Fuller, 894,879, August 4, 1908; McCoy et al., 2,017,468, October 15, 1935.

The claimed invention is described in the Examiner's statement as follows: "This application relates to method and means for the concentration and recovery of phosphate values from sands or fine material. These fines are the material passing through screens of one-sixteenth to one-twentieth inch mesh. In the recovery of the mineral the material is first scoured and then the extremely fine slimes are washed therefrom through operation of well known processes. The material then has mixed with it a small proportion of an oil such as heavy petroleum tar or fuel oil, preferably containing soap or other emulsifying action. This oil-treated material is passed to a screen submerged below the surface of water. The mesh of the screen is of such size that all of the unoiled material will pass therethrough. When the oiled material is passed to the screen, the silica sand will continue to pass through the screen, but the phosphatic materials will no longer pass through the openings of the screen but will slide along the surface of the screen and may be recovered separately from the sand. The applicant does not give any explanation of this action. The apparatus is mounted in a tank provided with a sloping bottom. A cylindrical screen is arranged to rotate on an inclined axis in the tank with suitable provision for separately receiving the material passing over the screen from the material passing through the screen. The tank is provided with an overflow weir which is above the level of the bottom of the screen."

It appears that the application of appellant was involved in an interference with an application of George H. McCoy et al., interference No. 68521, upon two counts reading as follows:

"1. The method of separating phosphatic materials from sand and other impurities which consists in agglomerating the phosphatic material while leaving the sand and other impurities in their original physical form and causing the mass to pass down an inclined screen submerged in water, of a size permitting the sand and other impurities to pass therethrough and not the agglomerated phosphatic material.

"2. The process which consists in mixing a mass of phosphatic material, sand and other impurities which exist in particles of substantially the same size, with an emulsion of oil, soap and water, whereby to agglomerate the phosphatic material to form particles of larger size, then passing the mass so treated over an inclined screen submerged in water and of a mesh size permitting the sand and impurities to pass therethrough and the agglomerated phosphatic material to pass thereover."

This interference was decided adversely to appellant upon a concession by him, as appears from the following letter of the Examiner of Interferences, dated May 17, 1935:

"A concession by Mason, the senior party, to McCoy, Wright and Hall, having been filed and said concession having been construed as covering all common patentable subject matter and otherwise found to comply with the requirements of Rule 125, priority of invention of the subject matter in issue is hereby awarded to George H. McCoy, David M. Wright and J. Pankey Hall, the junior party.

"The said instrument is construed as a waiver of the right of appeal, and no time for appeal is therefore set.

"In view of the above concession, the motions which were set to be heard before the primary examiner on May 15, 1935, are dismissed."

It appears that on May 24, 1935, appellant's application here involved was assigned to Swift & Co. Fertilizer Works, a corporation, and that, Mason being deceased, this application is prosecuted by said corporation.

It further appears that at the time of the declaration of the interference, April 6, 1934, the said Swift & Co. Fertilizer Works was, through assignment, the owner of the McCoy et al. application, and that on October 15, 1935, a patent was issued to said McCoy et al. as assignors to said Swift & Co. Fertilizer Works; said patent being one of the two references cited in the instant case.

This patent discloses the same process as is disclosed by appellant; the only difference being that in appellant's application specific proportions of oil and soap are given as preferred, but the application states: "The oil, soap and water may be employed in any suitable proportions to secure an emulsion. * * *"

While the specification of the McCoy et al. patent, apart from the claims, does not disclose the use of a screen having holes larger than the greater part of the phosphate constituents, both claims 11 and 12 of the patent specifically include this element.

Counts 1 and 2 of the interference are claims 1 and 3 of said patent. In addition, ten other claims were included in the patent, among which are the following:

"11. The method of separating the silicious and phosphatic constituents of fine mineral phosphates which comprises, oiling said fine mineral phosphates, supplying said mineral to a screen under water, said screen having holes larger than the greater part of the phosphatic constituents, and imparting relative motion to said screen and mineral, whereupon the silicious constituents of the mineral pass through the screen and the phosphatic constituents thereof move along the screen under the water.

"12. The method of separating the silicious and phosphatic constituents of fine phosphate mineral which comprises, oiling said mineral, supplying said mineral to the upper end of an inclined screen under water, said screen having holes larger than the greater part of the phosphatic constituents, and imparting relative motion to said screen and the mineral, whereupon the silicious constituents of the mineral pass through the screen and the phosphatic constituents thereof move downward along the screen under the surface of the water."

It thus appears that, at the date of the issue of said patent, the party in interest here, Swift & Co. Fertilizer Works, was the owner of both applications.

The patent to Fuller relates to a screen separator for separating graphite from its matrix, and discloses a container in which

there is a rotary screen to which the material to be separated is fed from a hopper. The ore to be separated is stated to be crushed to "a sort of sandy gangue containing intermingled therewith the fine scales of graphite." The patent states that: "Graphite is segregated from its matrix very quickly and efficiently by this invention, especially when it is of the foliated variety occurring in minute scales in cleavage planes of quartzite. Such ore is reduced by crushing to a sort of sandy gangue containing intermingled therewith the fine scales of graphite. When such mass passes over the screen the sand which because of its greater specific gravity seeks the bottom, passes through the screen, while the graphite crystals tend to form an overlying layer and are washed along away from the sand and saved. * * *"

The patent states that the apparatus is usable on dry ores under water.

Claims 1 and 2 of the instant application were rejected by the Examiner as being readable upon the disclosure of the winning party in the interference, McCoy et al., and also upon the ground that the assignee of said winning party, being also the assignee of appellant, had taken out a patent upon the McCoy et al. application containing claims 11 and 12 thereof, and that the assignee should not be permitted to take out another patent with claims such as 1 and 2 here involved, not patentably distinct from the claims already granted in the patent issued to said assignee.

With respect to claims 3 to 8, inclusive, the Examiner held that they were anticipated by the patent to Fuller; appellant merely putting to a new use the structure disclosed in that patent.

The Board of Appeals affirmed all the grounds of rejection advanced by the Examiner. The Board in its decision stated: "The patent [to McCoy et al.] also contains method claims 11 and 12 which are substantially the same as claims 1 and 2 on appeal. These claims of the patent and of the application are similarly worded except that the claims of the patent include the step of oiling the fine mineral phosphates whereas the appealed claims do not positively include this initial step. However, they in effect require this step since they recite the succeeding steps as practiced on material containing oiled fine mineral phosphates. Claims 11 and 12 of the patent do not require the phosphatic constituents to be agglomerated but are broadly drawn in this respect, using the same language as is employed in appealed claims 1 and 2. The assignee of the instant application took out the McCoy et al. patent containing these claims 11 and 12 which, like appealed claims 1 and 2, are generic to the two disclosures. We believe under these circumstances that the examiner properly held applicant not entitled to the allowance of claims 1 and 2."

We find no real distinction between appellant's process and that disclosed by McCoy et al. If the McCoy process results in agglomeration of the particles of phosphatic material, so will that of appellant. If, on the other hand, appellant's process will result in the coating of particles without agglomeration, so will that of McCoy et al.

■ Appellant contends that claims 1 and 2 here involved further distinguish over the issue of the interference in that they contain the limitation of a screen having holes larger than the greater part of the phosphatic constituents. As hereinbefore stated, such limitation does appear in claims 11 and 12 of the patent, and presumably they were original claims, nothing to the contrary appearing in the record. In such cases claims are treated as part of the disclosure, whether or not all of their elements are found in the descriptive part of the specification. In re Mosher, 79 F. 2d 911, 23 C.C.P.A., Patents, 740; In re Smolak and McQuade, 88 F.2d 838, 24 C.C.P.A., Patents, 1132.

We must hold, therefore, that the element of screens having holes larger than the greater part of phosphate constituents was a part of the disclosure of the application of McCoy et al. involved in the said interference.

The only difference between claims 1 and 2 here involved and claims 11 and 12 of the McCoy et al. patent is that claims 1 and 2 omit claiming, as a step of the process, the oiling of the fine mineral phosphates, while claims 11 and 12 of the patent include it. However, as stated by the Board of Appeals, claims 1 and 2 in effect recite, without claiming, this step, since the material to be operated upon contains oiled fine mineral phosphates.

■ It is well established that the decision in an interference proceeding is conclusive of every question that actually was presented therein, and also of every question that might have been presented and determined

in that case. In re Rhodes, 80 F.2d 525, 23 C.C.P.A., Patents, 816.

We agree with the Board of Appeals that claims 11 and 12 of said patent and claims 1 and 2 of the application here involved are generic to the two disclosures, and, under all the facts disclosed, said claims 1 and 2 were properly rejected.

With respect to claims 3 to 8, inclusive, the Board of Appeals stated: "Claims 3–8, inclusive, have been rejected on the patent to Fuller. These claims are drawn to the apparatus, but do not include any apparatus limitations distinguishing from Fuller. By their introductory clauses they point out that the apparatus is intended for use in separating the silicious and phosphatic constituents of oiled fine mineral phosphates, whereas Fuller's patent states that he contemplates using his apparatus for the separation of ores, and while it is applicable to various other varieties of ores, it particularly concerns the separation of graphite from its matrix. This reference to intended use in the introductory clause is not deemed as patentably differentiating the claims from the Fuller construction."

The only structural element embraced in the group of claims 3 to 8 not specifically disclosed in the Fuller patent is the provision that the screen has holes larger than the greater part of the constituents passing over the same.

Appellant contends that the Board of Appeals erred in not regarding as a positive element of the claims the introductory clauses, and that, when so considered, in connection with the limitation in mesh size of the screen, the claims are patentable. With regard to the mesh size of the screen, the Board of Appeals stated: "The claims of this group further state that the screen has holes larger than the greater part of the constituent passing over the same. Such statement does not define the size of the openings in such a manner as to distinguish from the Fuller construction. In each case the silicious material passes through the openings of the screen and therefore it is deemed a warranted conclusion that the screen openings in Fuller are commensurate in size with those in the application. In any event, any difference in this respect constitutes no more than a difference in degree and it is notoriously old to select screens having the desired size openings in view of their intended use. * * *"

We are in agreement with this statement of the Board.

With respect to the introductory clauses of the claims, we are of the opinion that they no more than point out a new use for an apparatus disclosed by Fuller.

It is, of course, elementary patent law that a patentee is entitled to all the uses to which his device may be put, especially in uses so closely related as the uses of the apparatus of Fuller and that of appellant.

It is the general rule, often stated by us, that the preamble to a claim does not constitute a limitation upon structure, but merely states a purpose. Braren v. Horner, 47 F.2d 358, 18 C.C.P.A., Patents, 971; In re Beplate et al., 77 F.2d 506, 22 C.C.P.A., Patents, 1232.

Of course it is true that introductory phrases in claims should not be ignored, for they often are of assistance in giving significance to the language used in describing the individual elements, and sometimes they may in fact constitute an essential element in the invention claimed. Hall v. Schimadzu, 59 F.2d 225, 19 C.C.P.A., Patents, 1288. However, in the case at bar we regard the introductory phrases of the claims as stating only the purpose for which the apparatus is to be used, and, such apparatus being disclosed in the Fuller patent, appellant merely claims a new and related use for the apparatus disclosed by Fuller.

In our opinion, the Board of Appeals came to the right conclusion with respect to all of the involved claims, and its decision is affirmed.

Affirmed.