36 C.C.P.A.(Patents)

**Application of BENNER et al.**
**Patent Appeal No. 5520.**

United States Court of Customs
and Patent Appeals.
April 12, 1949.

Rehearing Denied June 24, 1949.

William H. Webb, of Pittsburgh, Pa., and Donald A. Gardiner, of Washington, D. C. (Stebbins, Blenko & Webb, of Pittsburgh, Pa., and Smith, Michael & Gardiner, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection, by an examiner in Division 38, of seventeen claims numbered 17 to 24, inclusive, and 26 to 34, inclusive, in appellants' application for patent bearing the broad title "For Ball Mill." In the Patent Office it was a "Dual Prosecution" case of which Division 25 had general jurisdiction. With respect to claims numbered 35 to 40, inclusive, the jurisdiction of the latter named division was specific and those claims also were rejected by an examiner in that division, but his decision was reversed by the board. So, those claims stand allowed along with claim 25, which was allowed by the examiner in Division 38.

It appears that during a long period of time ball mills have been used for breaking down, or pulverizing to powdered form, hard granular materials; that the mill comprises a container, usually cylindrical in form, having a wear-resisting lining; that the container is mounted for rotating, being partially filled, when in use, with pebbles or balls and the material which is to be broken down or pulverized; and that, when the container is rotated, the contents tumble about on the inside in a manner which results in the material being ground between the balls and the lining of the container.

When the material which is being ground is very hard, the friction wears the lining of the container severely. The specification of the here involved application states that porcelain linings have been conventionally used, and that appellants, as expressed in their brief, "discovered that, by replacing the procelain [sic] linings presently used in ball mills with cast linings composed predominantly of crystallized alumina embedded into a glassy matrix, the life of the lining is increased many times."

The specification additionally asserts: "* * * With the porcelain lining elements of ordinary thickness a grinding life of 500 hours when the mill is wet grinding alumina powder is considered good. The material of the present invention, however, when used as ball mill linings wears as a rate less than one seventh as fast as porcelain when grinding the same material. In addition its cost of manufacture is not high, and being free from voids, it retains its usefulness even when worn down a material amount of its initial thickness.

"Ball mill linings of the present invention consist of extremely hard solid cast masses of crystalline alumina containing a minor percentage of glass. Since the lining material is fused and cast, as distinguished from being bonded and sintered, it is highly resistant to chipping. Its surfaces are dense, unyielding, and impermeable, thus providing an ideal surface for the grinding pebbles to work against and one easy to clean when changing the mill from a batch of material of one type to that of another type. Because the lining consists predominantly of alumina, it is particularly suitable for grinding alumina since the material worn off the lining does not differ materially from the alumina being ground."

As a matter of fact the board found that appellants:

"* * * have established that the life of their ball mill linings is 8,000 hours of operating life when used in the pulverizing of such hard materials as fused alumina under standard operating conditions as compared to an average life of 600 hours of the high grade porcelain linings pre- viously used for this type of grinding operation."

The claims of the group numbered 35 to 40, inclusive, which stand allowed, are for a ball mill the container of which is lined with appellants' lining element. It was the view of the Board of Appeals, contrary to that of the examiner, that the combination of the container and the lining element presents subject matter patentable over any prior art. As has been stated, claim 25 (which is for the lining element standing alone—that is, not combined with the container—but which differs widely from the appealed claims in the proportion of the ingredients entering into its structure) was allowed by the examiner and was not before the board. All the appealed claims are for the lining element standing alone and as to them the board agreed with the examiner's grounds of rejection; that is, upon prior art, hereinafter listed, the decision in the case of In re Thuau, 135 F.2d 344, 30 C.C.P.A., Patents, 979, being cited.

As originally filed the application appears to have presented only 14 claims numbered 1 to 14, inclusive. After claim 14 had been rejected once, it was cancelled and 15 and 16 submitted. Subsequently, amendments were entered supplanting the original claims together with 15 and 16, so that, as prosecuted before the respective examiners, the application embraced 25 claims. As has been stated, the examiner in Division 38 allowed one of those, which related to the lining element per se but differed materially from those on appeal here, and the board allowed seven others, all of which were characterized by the combination of container and lining element. So, seventeen claims were rejected and are before us. No separate analysis of them is required; that is, as the issues are presented to us, no one of the appealed claims is alleged to have any limitation which distinguishes it patentably from the others.

Claims 18, 22, 29, and 32 (the latter the broadest of all the claims) will serve to illustrate the subject matter:

"18. A ball mill lining element, said element being composed of a dense, hard,

940

wear-resistant fused casting resulting from solidification of a mixture of from 85 to 98% of aluminous material composed predominantly of alumina and from 2 to 15% glass, said casting comprising $Al_2O_3$, as such, in amounts from approximately 54 to 98%, said alumina being in the form of elongated crystals with the majority of the crystals having their major axes oriented perpendicular to the wearing surface of the element."

"22. A ball mill lining element comprising a dense, hard, wear-resistant fused casting, said casting comprising $SiO_2$ from 7.97 to 20.55%, CaO from 0.10 to 1.65%, $Na_2O$ from 0.18 to 3.00%, $TiO_2$ from 2.94 to 3.40%, $Fe_2O_3$ from 5.88 to 13.60% and other metal oxides from .02 to 1.28%, said last named metals consisting predominantly of Mg, Mn, and Ba, the balance of the composition being alumina."

"29. A ball mill lining element composed of a dense, hard wear-resistant, fused casting substantially free from voids and cracks, said casting comprising crystalline $Al_2O_3$, as such, in amounts from approximately 54% to 98%, and a glassy matrix."

"32. A ball mill lining element composed of a dense, hard, wear-resistant, fused casting substantially free from voids and cracks, said casting comprising 85% to 98% crystalline alumina, as such, and 2 to 15% glass."

The references cited as prior art in connection with the rejected claims are listed in the decision of the board as follows:

| | | |
|---|---|---|
| Saunders, | 954,766, | Apr. 12, 1910, |
| Allen, | 1,199,042, | Sep. 26, 1916, |
| Schroeder, | 2,044,817, | June 23, 1936, |
| Benner et al., | 2,079,101, | May. 4, 1937, |
| Easter et al., | 2,154,153, | Apr. 11, 1939, |
| Logan et al., | 2,196,075, | Apr. 2, 1940, |
| Searle: Refractory Materials (2nd Ed.) 1924, page 174. | | |

Of the prior art cited the board regarded as "most pertinent" the patents to Schroeder (No. 2,044,817), Logan & McMullen (No. 2,196,075), Benner & Easter (No. 2,079,101), and Easter & Brownell (No. 2,154,153). It is noted that McMullen, one of the joint claimants in the instant application, was a joint inventor with Logan of patent 2,196,075; that Benner, the other joint claimant here, was the joint inventor with Easter of patent 2,079,101; and that Easter is also one of the joint inventors of patent 2,154,153. It also is noted that the patents to Logan & McMullen, Benner & Easter, and Easter & Brownell are assigned to The Carborundum Company which, at the hearing before us, was stated to be the assignee of the here involved application, the individual inventors, McMullen, Benner, and Easter, evidently being associated with the company in some capacity. It is obvious that the individuals and the company have had considerable experience relative to the compositions of matter of the nature of that here involved, and in the brief before us, while it is asserted that "No one of the references, as to composition is co-extensive in teachings with the present invention," it is conceded that "some of the compositions therein disclosed are *embraced by the range of alumina compositions defined in certain of the claims.*" (Italics ours)

In the case of In re Cooper et al., 134 F.2d 630, 632, 30 C.C.P.A., Patents, 946, we said:

" * * * if the prior art shows a range, as appellants apparently admit it does in this case, which includes the range claimed in their application, in the absence of the production of a different product they are not entitled to a patent."

However, there are other factors to be considered in the instant case.

In the course of its decision the board, referring to the particular references which it deemed most pertinent, made the following findings of fact:

" * * * These references show that refractory blocks very similar in composition to the refractory composition used by the appellants have been cast into blocks and used as lining elements for glass furnaces and glass tanks. That the composition of the lining elements is fairly anticipated in these references is apparently not disputed, nor is it disputed that it is old to cast these compositions into blocks which are used for lining glass furnaces."

Obviously it was the view of the tribunals of the Patent Office that the introductory phrase, "A ball mill lining element," with which each of the appealed claims begins, is not a limitation entering into the structure of the composition of which the lining element is composed, but that it merely indicates the use to which the well defined composition is to be applied. So, because the decision in the Thuau case, supra (in which we affirmed the decision of the board affirming that of the examiner), held, as the board construed our meaning, "that limitations with reference to the intended use of a composition are without patentable significance," and because nothing which was deemed to be new over the prior art was found in the claims, so far as the composition of the lining element standing alone is concerned, the claims were rejected.

In the course of the brief filed before us on behalf of appellants it is said:

"Appellants are not claiming a composition of matter per se, nor are they claiming merely a new use of an old composition. The present invention relates to ball mill linings and all the appealed claims are addressed and properly restricted to a ball mill lining element which is defined in the claims in terms of its chemical composition and also in terms of its physical characteristics and properties. The Examiner has refused to give due and proper consideration to the fact that the claims specify that the article is 'A ball mill lining element * * *,' which phrase reads into the claims with all the definiteness at appellants' command that the article is not only made of the required composition and physical characteristics, but is of such size and shape as to be adapted for lining ball mills. The claims are therefore addressed to a new article of manufacture and not to a composition of matter."

Elsewhere the brief suggests that rejection of the claims requires an extension of the doctrine followed in the decision of the Thuau case, supra, and it is contended that:

"* * * Subsequent decisions conclusively show that that decision must be limited in its application and, at most, is to be taken solely as authority that a new use of an old composition is unpatentable only where both the form of that composition is immaterial to the developed use and there is completely lacking any change, modification or adaptation of the old composition over the prior art in applying the material to its new use. It has been held that a change, modification, or adaptation, be it ever so slight, imparts patentability."

It is asserted in substance that appellants have discovered and developed a new, unobvious and unexpected use for the material which they, in part at least, invented (such as they did not themselves invent being in the prior art as the invention of others); that such newly discovered use is nonanalogous to any previously known use; that the new use is accompanied by surprising and unexpected results; that modification of the material as to shape has been required in order to adapt it to the new use discovered; that "something new has been produced, namely, a fused, cast ball mill lining element composed of crystalline alumina in a glassy matrix," and that they are entitled to patent protection.

The brief says further:

"The difference between the present situation and that before this Court in the Thuau case is that Thuau was merely claiming a new use for an old condensation product whereas appellants claims are directed to an article of manufacture which is new."

We are unable to agree that it was error to hold (as, in effect, was held by the tribunals of the Patent Office) that the introductory phrase, "A ball mill lining element," does not constitute a part of the subject matter of the appealed claims to be considered as a limitation in determining the question of patentability. The phrase comprises the name of a product and is introductory. It does not contribute to the definition of any composition or any part of any composition. Whatever of limitation there may be about it is a limitation as to its use, and unfortunately or fortunately—we do not under-

take to determine which—no provision has been made in the patent statutes for granting a patent upon an old product based solely upon discovery of a new use for such product. So, the matter of nonanalogous use alleged is not important in this case.

The holding in the Thuau case, supra, to the effect that limitations with reference to the intended use of a composition are without particular significance was not a new doctrine, nor was it new to hold, as was there held in effect, that the introductory phrase of a claim, where it imparts nothing to the substance of the claimed invention, is not a limitation to be considered on the question of patentability. See, with their several citations, Braren v. Horner, 47 F.2d 358, 18 C.C.P.A., Patents, 971; In re Dawe, 53 F.2d 543, 19 C.C.P.A., Patents, 728; Ex parte Abrahamsen, 56 F.2d 871, 19 C.C.P.A., Patents, 1056; In re Wolfe, 69 F.2d 550, 21 C.C.P.A., Patents, 974; In re Beplate et al., 77 F.2d 506, 22 C.C.P.A., Patents, 1232; Deutsch et al. v. Ball, 77 F.2d 930, 22 C.C.P.A., Patents, 1322; In re Mason, 94 F.2d 220, 25 C.C.P.A., Patents, 873; In re Dense, 156 F.2d 76, 33 C.C.P.A., Patents, 1171.

The contention before us, hereinbefore quoted, that, the decision in the Thuau case, supra, must be limited in its application and at most is to be taken solely as an authority that a new use of an old composition is unpatentable only where both the form of that composition is immaterial, etc., was presented before the board in the exact phraseology in which it is presented here, and we here quote from the board's answer the following:

"*Assuming that these limitations upon the Thuau doctrine are valid,* the patentability of the claims under consideration depends on whether or not they define a modification or adaptation of the old composition in applying it to its new use. *A careful review of these claims fails to reveal a clear definition of any substantial modification in the elements claimed over the prior art.* As pointed out above, the patents of record show that it is old to cast compositions of the type defined in these claims in the form of blocks which are used for lining glass furnaces. We are unable to find any limitations in the claims which clearly differentiate the ball mill lining elements [sic] defined therein, which is in the form of a cast block, from the cast block of the prior art." (Italics ours)

This court has not failed to recognize that appellants have apparently made a valuable contribution to the ball mill art, and we have examined the numerous claims carefully looking for phraseology which would furnish grounds for a patent grant, but have looked in vain.

The brief asserts, as quoted, supra, that where a new use for an old product was found "It has been held that a change, modification, or adaptation [of the old product], however slight, imparts patentability." No case has been cited in which such a holding appears, and we think the statement is too broad to be accepted as sound law. Surely in order to "impart patentability" the change or modification or adaptation must involve invention.

Invention might be present in a very slight alteration, of course, but such alteration must amount to something more than mechanical or professional skill. So far as "adaptation" is concerned, if the word is used as a synonym for "use," it would not impart patentability because of the lack of statutory authority for the grant of a patent based solely on use.

The condition confronting appellants here is that the appealed *claims*—the factors to which we must look—do not define any change or modification of the prior art structure. As has been stated hereinbefore, appellants' brief asserts that use of the composition as a lining element for a ball mill has required a "modification as to shape." That may be true. The *specification* discusses the size of the blocks used in the glass furnaces but the *claims* have no limitation relating to "shape." Several of the claims contain a clause similar to that concluding claim 18, supra, reading, "said alumina being in the form of elongated crystals with the majority of the crystals having their major axes oriented perpendicular to the wearing surface of the

element." We do not understand that the clause relates to the over-all shape of the lining element, but if it does, it is sufficient to say that the limitation is taught in the Benner et al. patent, No. 2,079,101.

At another place in the brief for appellants it is said that "something new has been produced, namely, a fused, cast ball mill lining element composed of crystalline alumina in a glassy matrix," and claim 29, supra, requires "a glassy matrix." The specification of the Benner et al. patent, No. 2,079,101, teaches the presence of a glassy matrix and the patent to Easter et al., No. 2,154,153, not only teaches the presence of a matrix, which obviously is glassy, but several of the claims require it.

Recurring to the suggestion to the effect that rejection of the appealed claims requires an extension of the doctrine of the Thuau case, supra, it seems to us obvious that there was no extension of the doctrine of that case by the tribunals of the Patent Office in rejecting the claims here appealed and we think it clear that their decision in rejecting them must be approved. They followed the rule in that case just as that case itself followed the principle of numerous prior decisions cited therein and others cited herein relative to (a) the construction of the introductory phrases of claims and (b) the non-patentability of old products upon the basis of a new use of them. Those are the only questions here involved.

■ It is true, of course, that cases arise in which the introductory phrase is so used that it is not limited to indicating use but contributes an element to the claim, and in such cases the phrase necessarily is treated as a limitation upon the subject matter of the claim. See Hall v. Shimadzu, 59 F.2d 225, 19 C.C.P.A., Patents, 1288; Lawson v. Davis, 129 F.2d 873, 29 C.C.P.A., Patents, 1217. The instant case does not fall within that category.

The brief for appellants cites a number of decisions of the Board of Appeals of the Patent Office which are claimed to be inconsistent with the decision in the Thuau case, supra, and consistent with the position for which appellants contend. Most, if not all, of those decisions appar-ently were rendered prior to our decision in the Thuau case, supra. We deem it unnecessary to analyze those decisions. We are of opinion that the board correctly followed the Thuau case, supra, in so far as it involved the issues here presented, and any decision inconsistent therewith would, in our opinion, be erroneous. No court decision contrary to the decision in that case has been brought to our attention. Upon the contrary, the United States Circuit Court of Appeals, Second Circuit, in an opinion authored by Judge Learned Hand, justly esteemed as a high authority on patent law, in the case of Old Town Ribbon & Carbon Co., Inc., v. Columbia Ribbon & Carbon Manufacturing Co., Inc., et al., 159 F.2d 379, 382, said:

"The Constitution (Art. I, § 8) gives Congress power to grant limited monopolies for 'discoveries,' and there is no antecedent reason for saying that Congress might not, if it chose, issue a patent for a new use of an old physical object, which is in fact closely akin to, if not identical with, an 'art,' like a process. There would be nothing unreasonable in so doing; substantially no 'machine, manufacture, or composition of matter' is ever new throughout; usually it is a combination of elements, all of which are severally old, and the invention consists in the mental act of fabricating the combination. Nevertheless, since 1793, unless a patent disclosed a 'new and useful art,' a new 'machine,' a new 'manufacture,' or a new 'composition of matter,' it has not been a valid patent. If it be merely for a new employment of some 'machine, manufacture, or composition of matter' already known, *it makes not the slightest difference how beneficial to the public the new function may be, how long a search it may end, how many may have shared that search, or how high a reach of imaginative ingenuity the solution may have demanded. All the mental factors which determine invention may have been present to the highest degree, but it will not be patentable because it will not be within the terms of the statute.* This is the doctrine that a 'new use' can never be patentable. In this circuit we have many times applied it, and it has been recognized elsewhere. As we have

said in earlier cases, this does not mean that very slight physical changes in a 'machine,' a 'manufacture' or a 'composition of matter,' may not be enough to sustain a patent; the act of selection out of which the new structure arises, is the determinant, and *small departures may signify and embody revolutionary changes in discovery;* but the law does not protect the act of selection per se, however meritorious, when it is not materially incorporated into some new physical object." (Italics ours)

In a footnote this court's decision in the Thuau case, supra, is cited as being in harmony with the holding of that court.

The brief for appellants suggests that this court recognized a "distinction between the Thuau case and the present one" in our decision of the case of In re Haller, 161 F.2d 280, 34 C.C.P.A., Patents, 1003. The reasoning upon which the statement is based is not regarded as sound. We distinguished there between Haller's case and some other cases which had been cited in the brief for him by stating that in those other cases it appeared that "something new had been produced" which was not true of Haller. The trouble for appellants here is that they are in the same situation that Haller was in there. Our decision there was in entire harmony with that in the Thuau case, supra, and with that of the Circuit Court of Appeals quoted supra.

For the reasons stated, we are not convinced that there was error in the holdings of the tribunals of the Patent Office as to the appealed claims, and the decision of the board is affirmed.

Affirmed.