44 C.C.P.A. (Patents).

**Matter of the Application of Walter L. HACK.**

**Patent Appeals No. 6278.**

United States Court of Customs and Patent Appeals.
June 4, 1957.

Townsend & Townsend, San Francisco, Cal. (Stephen S. Townsend, San Francisco, Cal. and J. Austin Stone, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, RICH, and JACKSON (retired), Judges.

JACKSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the final rejection of claims 3 and 5 of patent application 208,449, filed January 29, 1951, for a brazing alloy.

The rejected claims, the only ones remaining in the case, read as follows:

"3. A brazing alloy composed entirely of approximately 35% by weight of gold, approximately 62% by weight of copper, and approximately 3% by weight of nickel.

"5. A brazing alloy for use under conditions of elevated temperatures and high vacuum which is characterized by low surface tension characteristics, low vapor pressure, flowability and fine crystalline structure composed entirely of gold, copper and nickel, said alloy comprising between 25% to 50% by weight of gold and from 1% to 5% by weight of nickel."

The references relied upon are:

| | | |
|---|---|---|
| Peterson, | 2,164,938, | July 4, 1939; |
| Nelson, | 2,426,467, | Aug. 26, 1947, |
| German Patent | 575,257 | Apr. 26, 1933. |

The new alloy is characterized by its low surface tension characteristic and flowability which is superior to that of previous alloys consisting only of copper and gold. The addition of nickel also imparts a fine crystalline structure to the composition, thereby minimizing leakage when it is used as a soldering alloy in the production of vacuum tube equipment.

The patent to Nelson was relied upon to show that gold-copper alloys of the type claimed, but which do not contain any nickel, are old and have been used as solder in the assembly of vacuum tubes.

■ Peterson discloses a gold alloy having 33 to 84% gold, 11 to 67% copper, and 0.1 to 5% cobalt. The cobalt is said by the patentee to "act as the regulator of grain size in the alloy. If no cobalt is used, the grain size of the alloy of the present invention is not superior to the grain size of prior gold alloys." He also explains:

"It is known to the applicant, of course, that white gold, which has nickel in it, has superior resistance to tarnish and abrasion than yellow gold of like karat. However, the base alloy described herein makes possible the manufacture of a yellow gold alloy whose resistance to wear and corrosion compares favorably with white gold."

Peterson further refers to the fact that the "paling" or "decolorizing" effect of cobalt in the gold-copper alloy is less than that of nickel, "roughly only one fourth as great as nickel." As the board stated, Peterson apparently preferred to add cobalt rather than nickel to the gold-copper alloy because he wanted to preserve the yellow color of the gold.

The German patent to Firma G. Rau was relied upon to show an equivalence of cobalt and nickel in gold-copper alloys. The patentee disclosed that the nickel in his gold-copper-nickel alloy "can be totally or partially replaced by other metals similar to nickel, namely cobalt, iron or chromium, or else by metals of the platinum group * * *."

The claims were rejected by the Primary Examiner as unpatentable over Nelson in view of Peterson and the German patent. The board affirmed this rejection, and further held that the recitation of the intended use of the alloy (as a "brazing" alloy) was of no patentable import. From this holding, it can be concluded that the board did not consider the Nelson reference, which was cited only for the purpose of showing that alloys similar to that claimed were known in the brazing art, as vital.

The prior art cited clearly, in our view, discloses the claimed composition of gold, copper and nickel. Peterson, disclosing an alloy of gold, copper and cobalt, suggests that nickel can be substituted for cobalt if the practitioner is not concerned with the "paling" effect which would be the result of such a substitution. The German patent explicitly discloses and claims an alloy in which the ingredients are gold, copper and nickel. Nowhere in the course of the prosecution of this case has applicant contended that the percentage proportion of each metal used in his alloy is critical. Such selection would seem but a matter of choice. The precise percentages claimed, moreover, fall within the range disclosed by Peterson. These references alone, without reliance on the patent to Nelson, show that the claimed composition of matter is neither new nor unsuggested by the art.

Appellant, however, contends that one cannot justifiably rely upon the Peterson reference and the German patent, which relate to jewelry and spectacle manufacturing, respectively, and which are not analogous to the brazing art. He claims that one cannot assume the equivalency of nickel and cobalt in the special environment of applicant's claimed invention, namely, in the brazing art.

These arguments stem, necessarily, from the supposition that patentable significance can be attributed to the term "brazing" in the introductory clauses of claims 3 and 5.

Such a supposition, we think, is erroneous.

■ The reference in the claims to "brazing" is, as the board stated, but an indication of the broad field of contemplated use and is not a limitation to be considered in the question of patentability. In re Thuau, 135 F.2d 344, 30 C.C.P.A., Patents 979; In re Benner, 174 F.2d 938, 36 C.C.P.A., Patents, 1081; In re Craige, 189 F.2d 620, 38 C.C.P.A., Patents 1114.

In the oft cited Thuau case, the invention was directed to a therapeutic product for the treatment of diseased tissue. His claim 1 read:

"A new therapeutic product for the treatment of diseased tissue, comprising a condensation product of metacresolsulfonic acid condensed through an aldehyde." [135 F.2d 345.]

We there accorded no significance to the introductory clause and rejected the claim on prior art disclosing the claimed composition in use as a tanning agent. Likewise, in In re Benner [174 F.2d 941], the introductory phrase, "a ball mill lining element," was not considered part of the patentable subject matter of claims directed to a composition of matter consisting of aluminous material and glass. And in the Craige case [189 F.2d 622] the prefatory phrase "a veterinary anthelmintic composition containing" was not considered a limitation in the subject matter of the claim.

■■ These cases are merely expressive of the principle that the grant of a patent on a composition or machine cannot be predicated on a new use of that machine or composition. We did not in those cases deny a patent to applicant because there was necessarily any lack of *inventiveness* in adapting the known composition to a new use. We recognize that it often requires perceptivity and intuitive genius of the highest order to grasp the idea that a device or material in one art may be utilized in another. The inventive faculties may be brought as fully into play in this regard as they would be in the creation of a device *de novo*. But a patent on an old product, based on its new use, has never been authorized by the patent laws which provided for patents only on a new and useful art, machine, manufacture, or *composition of matter,* or any new and useful improvement thereof (R.S. § 4886). As declared in Old Town Ribbon & Carbon Co. v. Columbia Ribbon & Carbon Mfg. Co., Inc., 2 Cir., 159 F.2d 379, 382:

" * * * it makes not the slightest difference how beneficial to the public the new function may be, how long a search it may end, how many may have shared that search, or how high a reach of imaginative ingenuity the solution may have demanded. All the mental factors which determine invention may have been present to the highest degree, but it will not be patentable because it will not be within the terms of the statute. * * * "

The new patent statute of 1952, 35 U.S.C.A. § 1 et seq., in no way limits or modifies the doctrine of those cases. While it recognizes (Secs. 100(b) and 101) that the discovery or invention of a *new use* of a known process machine, manufacture, composition of matter or material may be patentable, it is obvious that such use can be nothing other than a method or process.[1] As a matter of claim drafting, therefore, the discoverer of a new use must protect his discovery by means of process or method claims and not product claims.

■ Applicant is here attempting to procure a patent based on his discovery that a known composition of matter can be adapted to use as a brazing alloy.

1. See Revision Notes to Section 101, contained in the appendix to H.R.Rep. No. 1923 and Sen.Rep. No. 1979, 82d Cong., 2d Sess. 1952 U.S.Code Cong. & Adm. News 1952, p. 2410: "The remainder of the definition clarifies the status of processes or methods which involve merely the new use of a known process, machine, manufacture, composition of matter, or material; they are processes or methods under the statute * * *."

His claims are product claims. To entitle him to a patent the composition claimed must be both new and unobvious to one skilled in the art. In our view it is neither.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

WORLEY, J., because of illness, was not present at the argument of this case, but, by agreement of counsel, participated in this decision.

JACKSON, J., retired, recalled to participate herein in place of COLE, J., absent because of illness.