**EXER–GENIE, INC., and E. E. Holkesvick, Plaintiffs-Appellees,**

v.

**Alexander G. McDONALD and Buddy Systems, Inc., Defendants-Appellants.**

No. 25229.

United States Court of Appeals, Ninth Circuit.

Sept. 14, 1971.

As Modified On Denial of Rehearing Nov. 18, 1971.

Certiorari Denied April 17, 1972.

See 92 S.Ct. 1498.

Ely, Circuit Judge, filed a dissenting opinion.

V. J. McAlpin (argued), Covina, Cal., for appellants.

Charles E. Wills (argued), of Nilsson, Robbins, Wills & Berliner, Los Angeles, Cal., for appellees.

Before BROWNING, ELY, and CARTER, Circuit Judges.

BROWNING, Circuit Judge:

This is an appeal from a decision of the district court holding claims 8, 9, and 10 of plaintiffs' Patent No. 3,197,204 valid and infringed. We conclude that these claims of the patent are invalid, and reverse.

I

The patented device, as defined by the claims in suit, consists of (1) a shaft with a hub at each end and two passageways in each hub; (2) a length of rope extending through one passageway in one hub, at least partially around the shaft, through the passageways in the other hub, again at least partially around the shaft, and then through the other passageway in the first hub; and (3) at one end, a means for suspending the device from a support. The claims also include certain details regarding the holes or "passageways" through the end pieces or "hubs," as will be noted later.

The opening paragraph of the specification describes the patented device as "a novel exercising device which is espe-

cially suitable for home use." It operates on a friction-resistance principle. The user pulls the rope through the device, exerting sufficient force to overcome the friction created by the wrapping of the rope around the shaft. The greater the number of turns of the rope, the greater the resistance the user must overcome, and the more strenuous the exercise.

As the findings disclose, plaintiff Holkesvick developed his exerciser after observing a fire-escape device which enabled the user to lower himself from a building by sliding slowly down a rope. The slow descent was made possible by friction created by wrapping the rope around a shaft attached to the user's belt.

As the district court found, "the principle of frictional resistance of a rope around a shaft is very old and well known, and the use of this principle with fire-escape devices goes back at least to 1874, based upon the prior art listed by the defendants, * * * some 85 years prior to the invention of the exerciser device of the patent in suit." Nonetheless, the district court held plaintiffs' exerciser patent was valid, essentially because "no one made the transition to an exerciser from a friction-type fire escape device nor from any other device employing the friction-resistance principle," until plaintiff Holkesvick did so.

## II

We think reversal is required under the principles and on the authorities

cited in Pevely Dairy Co. v. Borden Printing Co., 123 F.2d 17, 19 (9th Cir. 1941):

"It is well settled that mere application of an old device to a new use does not constitute invention.[1] Roberts v. Ryer, 91 U.S. 150, 159, 23 L.Ed. 267; Peters v. Hanson, 129 U.S. 541, 542, 553, 9 S.Ct. 393, 32 L.Ed. 742; Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U.S. 11, 18, 12 S.Ct. 601, 36 L.Ed. 327; Lovell Mfg. Co. v. Cary, 147 U.S. 623, 634, 635, 13 S.Ct. 472, 37 L.Ed. 307; Miller v. Eagle Mfg. Co., 151 U.S. 186, 201, 14 S.Ct. 310, 38 L.Ed. 121; Powers-Kennedy Contracting Co. v. Concrete Mixing & Conveying Co., 282 U.S. 175, 186, 51 S.Ct. 95, 75 L.Ed. 278. On the other hand, adaptation of an old device to a new use may constitute invention especially where the device is transferred from one art to another. C. & A. Potts & Co. v. Creager, 155 U.S 597, 606–609, 15 S.Ct. 194, 39 L.Ed. 275. But where such adaptation— with or without such transfer—is the product of mere mechanical skill, it does not constitute invention. C. & A. Potts & Co. v. Creager, supra; Concrete Appliances Co. v. Gomery, 269 U.S. 177, 185, 46 S.Ct. 42, 70 L.Ed. 222."

1. That the device involved here is old appears from the expired fire-escape patents referred to by the district courts, including De Boucherville, No. 147,828 (1874), Brooke, No. 308,052 (1884); Gregory (England), No. 13,939 (1887),

---

1. This and similar statements quoted throughout this opinion are subject to the caveat that a new use of an old machine may be patented as a process. What is not patentable is the old machine itself. *See* Federico, Commentary on the New Patent Act, 35 U.S.C.A. §§ 1, 16. Thus, a "process" may be patented (35 U.S.C. § 101), and "process" is defined to include "a new use of a known * * * machine" (35 U.S.C. § 100(b)). But "it was the intent of Congress to authorize the grant of a patent for a new use * * only when such use is claimed in the form of a process, art or method. Where an applicant's contribution resides in the use or act of using an old apparatus for new purposes, a claim drawn to the old apparatus does not define the invention to meet the statutory requirement of particularity and distinctness." 2 Deller's Walker on Patents 293–94 (1964). *See* Application of Hack, 44 C.C.P.A. 954, 245 F.2d 246, 248 (1957). *See also* Gottschalk, "The Term 'Process' * * * Includes a New Use," 40 J.Pat.Off.Soc'y 451, 455–62 (1952).

Van Scoy, No. 425,716 (1890), Ross, No. 434,888 (1890), Leffelman, No. 779,550 (1905).

The devices disclosed in these fire-escape patents and plaintiffs' device are all rope brakes, operating on a friction-resistance principle, and consisting basically of a friction post and a rope. The purpose or function of all these devices is to impede without arresting the movement of a rope relative to the device by causing it to pass around a metal post. Leffelman, No. 779,550, and De Boucherville, No. 147,838, disclose rope brakes constructed in essentially the same manner as plaintiffs'. Thus these two devices and plaintiffs' were the same in both structure and function. The uncontradicted testimony was that each could be used either as exercisers or as rope brake fire escapes, with certain adaptations mentioned later.

Thomas Jefferson, a moving spirit in establishing the American patent system, stated the basic principle that a patent monopoly should not be granted upon a new use for an old machine: "[A] machine of which we are possessed [may] be applied by every man to any use of which it is susceptible." VI Writings of Thomas Jefferson at 181 (Washington ed.), quoted in Graham v. John Deere Co., 383 U.S. 1, 10 n. 3, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Elaborating on

this principle, the Supreme Court said of a freezing device involved in Brown v. Piper, 91 U.S. 37, 41, 23 L.Ed. 200 (1875): "The thing was within the circle of what was well known before, and belonged to the public. No one could lawfully appropriate it to himself, and exclude others from using it in any usual way for any purpose to which it may be desired to apply it." See also Roberts v. Ryer, 91 U.S. 150, 157, 23 L.Ed. 267 (1875).

This principle has been reasserted and applied in recent cases. Thus, in Beckman Instruments, Inc. v. Chemtronics, Inc., 428 F.2d 555, 561 (5th Cir. 1970), the court stated: "the prior art is to be considered as covering all uses to which it could have been put. Thus a patent claiming a device that has already been put to use, albeit in a different manner, is invalid; in order to be valid over the prior art, it must claim not novel use, but novel conception."[2] See also Graham v. John Deere Co., supra, 383 U.S. at 4–10, 86 S.Ct. 684; Aerotec Industries of Cal. v. Pacific Scientific Co., 381 F.2d 795 (9th Cir. 1967).

█ Contrary to the district court's view, the old device put to a new use is not again patentable merely because the new use was unanticipated. As the Court said in General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S.

---

2. The doctrine that an old device applied to a new use may not be patented has been put on statutory grounds:

"These cases are merely expressive of the principle that the grant of a patent on a composition or machine cannot be predicated on a new use of that machine or composition. We did not in those cases deny a patent to applicant because there was necessarily any lack of *inventiveness* in adapting the known composition to a new use. We recognize that it often requires perceptivity and intuitive genius of the highest order to grasp the idea that a device or material in one art may be utilized in another. The inventive faculties may be brought as fully into play in this regard as they would be in the creation of a device *de novo*. But a patent on an old product, based on its new use, has never been authorized by the patent laws which provided for patents only on a new and useful art, machine, manufacture, or *composition of matter*, or any new and useful improvement thereof (R.S. § 4886). As declared in Old Town Ribbon & Carbon Co. v. Columbia Ribbon & Carbon Mfg. Co., Inc., 2 Cir., 159 F.2d 379, 382:

'* * * it makes not the slightest difference how beneficial to the public the new function may be, how long a search it may end, how many may have shared that search, or how high a reach of imaginative ingenuity the solution may have demanded. All the mental factors which determine invention may have been present to the highest degree, but it will not be patentable because it will not be within the terms of the statute. * * *'". Application of Hack, 245 F.2d 246, 248 (C.C.P.A. 1957).

242, 249, 66 S.Ct. 81, 84, 90 L.Ed. 43 (1945):

"Where there has been use of an article or where the method of its manufacture is known, more than a new advantage of the product must be discovered in order to claim invention. See DeForest Radio Co. v. General Electric Co., 283 U.S. 664, 682 [51 S.Ct. 563, 75 L.Ed. 1339]. It is not invention to perceive that the product which others had discovered had qualities they failed to detect. See Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 369 [48 S.Ct. 380, 72 L.Ed. 610]."

*See also* Wm. T. Alvarado Sales Co. v. Rubaloff, 263 F.2d 926, 928 (9th Cir. 1959).

Plaintiffs point to the district court finding that plaintiffs' exerciser "achieved several unexpected results, viz. there is a substantially constant resistance throughout the range of movement of the rope as it is pulled through the device, and the movement of the rope can be stopped at any point and there is no force tending to return the rope to its starting position, as with elastic members or weight-type exercisers."

 While a new combination of old elements may be patentable as not "obvious" if it produces unexpected results, plaintiffs' exerciser is not a new combination, but an old and well known one. The results referred to are not unexpected in a rope brake of this type— they are characteristic of it. As we have noted, the old device may not be patented a second time because it is discovered to have unexpected advantages in a new use.

2. Plaintiffs argue that there are differences rising to the level of invention between the rope brake exerciser described in their patent and the prior rope brake fire escapes.

Three changes are required to adapt the Leffelman and De Boucherville fire-escape devices to conform to the description in plaintiff's exerciser patent. First, the holes or "passageways" must be moved from the outer edge of the end pieces or "hubs" toward the center to a point next to the shaft, and flared inwardly, to reduce friction, and permit easier and smoother passage of the rope.[3] Second, the rope must be doubled back so that both ends emerge from the same end of the device, rather than running through the device from one end to the other. Finally, the rope must be pulled through the device, rather than having the device move along the rope, as it does when used as a fire escape.

The first two changes are minor. Perhaps "ingenuity was required to effect the adaptation, but no more than that to be expected of a mechanic skilled in the art." Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91–92, 62 S.Ct. 37, 41, 86 L.Ed. 58 (1941). The significance of the second change is particularly questionable. The patent itself suggests that either arrangement may be used: "As mentioned hereinabove, a short length of rope can be pulled through any of these devices first in one direction and then in the other, or, a relatively long length of rope can be pulled continuously in one direction and then the direction reversed so as to pull the rope continuously in the other direction." Col. 6, lines 56–64. The third change is not a structural change at all, but a change in the manner of operating the device—a change in use, that cannot be made the predicate of a new patent on the old device.

 3. Plaintiffs rely upon the presumption of validity arising from the issuance of the patent by the Patent Office; but the presumption is insuffi-

---

3. The claims describe the "passageways" in the "hub portions" as "axially extending" and "circumferentially spaced," with "inner surfaces which are substantially coextensive with the outer surface of the shaft," and with "inner ends which are flared outwardly to slidably guide said rope onto and off the outer surface of the shaft."

cient in the face of pertinent prior art (the fire-escape patents) not before the patent examiners, Aerotec Industries of Cal. v. Pacific Scientific Co., *supra*, 381 F.2d at 803. They rely also upon the so-called secondary indicia of invention ("commercial success," "long felt but unfulfilled needs," and "copying") ; but when patentable invention is clearly lacking, secondary considerations cannot fill the gap. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162 (1950) ; Graham v. John Deere Co., 383 U.S. 1, 35–36, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) ; Anderson's-Black Rock v. Pavement Salvage Co., 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969) ; Aerotec Industries, *supra*, 381 F.2d at 803.

### III

■ We deny defendants' request for attorneys' fees. This is not one of those "exceptional cases" in which an award of attorneys' fees would be proper. 35 U.S.C. § 285.

Reversed.

ELY, Circuit Judge (dissenting) :

I respectfully dissent. After a very carefully conducted trial, the district judge concluded, *inter alia,* as follows:

#### "III.

"United States patent No. 3,197,204 is good and valid in law.

#### "IV.

"The exerciser of patent No. 3,197,204, and as defined by the claims thereof, was not obvious at the time the invention was made to even a person skilled in the exerciser and/or physical education art, let alone to a person having ordinary skill in such art (35 U.S.C. § 103). Although the strict test of 'flash of creative genius' referred to by the Supreme Court in Cuno [Engineering] Corp. v. Automatic Devices Corp., 314 U.S. 84 [62 S.Ct. 37, 86 L.Ed. 58] (1941), was apparently abolished by Con-gress by the inclusion of the last sentence in Section 103 of Title 35, United States Code (Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 [1966]), the completely new type of exerciser of the patent in suit appears to be the result of just such a flash of creative genius, which is a further attribute of true invention. There were also the unexpected results and unusual and surprising consequences referred to in Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147 [71 S.Ct. 127, 95 L. Ed. 162 (1950)].

#### "V.

"Patent No. 3,197,204 is presumed to be valid pursuant to 35 U.S.C. 282, and this presumption of validity is strengthened where, as here, the prior patents relied upon by the defendants are no more pertinent than the reference patents cited by the Patent Office examiners. Neff Instrument Corporation v. Cohu Electronics, Inc., 298 F.2d 82, 86 (9 Cir. 1961) and Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1, 54 S.Ct. 752, 79 L.Ed. 163 (1934).

#### "VI.

"The copying of the exerciser of the patent in suit by the defendants is further evidence of invention; they were familiar with its construction, its use and its advantages, and the demand which had been created for it. The prior art relied on by the defendants was permitted to lay dormant for more than half a century until the trial of this infringement action. Ric-Wil Co. v. E. B. Kaiser Co., 179 F.2d 401, 404, (7 Cir. 1950), and Colgate-Palmolive Company v. Carter Products, 230 F.2d 855, 862 (4 Cir. 1956), cert. denied, 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed.2d 59.

#### "VII.

"The high degree of commercial success of the exerciser of patent No. 3,197,204 is further evidence of invention. National Sponge Co. v. Rubber

Corp. of Cal., 286 F.2d 731, 736 (9 Cir. 1961) and Hayes Spray Gun Company v. E. C. Brown Company, 291 F.2d 319 (9 Cir. 1961)."

The record reflects an abundance of evidence to support the factual findings which constitute the foundation for the foregoing legal conclusions and, while I recognize the validity of the general principles so carefully set forth by my Brother Browning, I am not persuaded that they are being correctly applied in the case at hand. As I see it, the proper resolution of the critical factual issues was difficult; hence, I would affirm the judgment because I cannot say with positive assurance that Judge Hill's factual findings were clearly erroneous.