GLOBE LININGS, INC., Howard D.
Webb and Arthur M. Lockhart,
Plaintiffs-Appellants,

v.

CITY OF CORVALLIS, Defendant and
Third-Party Plaintiff-Appellee,

v.

S & T CONSTRUCTION COMPANY,
INC., Third-Party Defendant and
Fourth-Party Plaintiff-Appellee,

v.

FIRESTONE TIRE AND RUBBER CO.,
Fourth-Party Defendant-Appellee.

No. 75–2848.

United States Court of Appeals,
Ninth Circuit.

June 14, 1977.

Rehearing and Rehearing En Banc
Denied Aug. 4, 1977.

Joseph B. Sparkman, Klarquist, Sparkman, Campbell, Leigh, Hall & Whinston, Portland, Ore., Francis A. Utecht, argued, Fulwider, Patton, Rieber, Lee & Utecht, Long Beach, Cal., for plaintiffs-appellants.

M. H. Hartwell, Jr., argued, Kolisch, Hartwell, Dickinson & Stuart, Portland, Ore., for appellee S & T Construction.

James H. Clark, argued, George L. Kirklin, McColloch, Dezendorf, Spears & Lubersky, Portland, Ore., for appellee Firestone Tire & Rubber Co.

Before LUMBARD,[*] WRIGHT and ANDERSON, Circuit Judges.

## OPINION

EUGENE A. WRIGHT, Circuit Judge:

Globe Linings, Inc. (Globe) is the owner of U.S. Patent No. 3,313,443 (the Dial patent), which has as its subject matter a floating cover for liquid storage reservoirs. This flexible cover protects stored liquid from falling debris and sunlight. It is also adapted, through the use of floats, to rise and fall with the level of the liquid. Because the cover is larger than the reservoir, folds form adjacent to the periphery. Rainwater is collected in the peripheral folds and removed by pump.

Under contract with the City of Corvallis (Corvallis), the S & T Construction Co. constructed a floating reservoir cover for the city's Baldy Reservoir. Globe brought suit for infringement of claim 5[1] of its patent. Corvallis and other defendants[2] contended that Globe's patent was invalid for obviousness under 35 U.S.C. § 103 (1970).[3] The

---

[*] Senior Circuit Judge for the Second Circuit.

1. Claim 5 of the patent defines this portion of the invention as follows:

"Apparatus for preventing contamination of the stored liquid in an open reservoir, comprising:

a continuous sheet of flexible, relatively thin material impervious to and completely overlying said liquid in coextensive relationship to the periphery of said reservoir the size of said sheet being greater than the area encompassed by the upper periphery of said reservoir;

anchor means securing the outer periphery of said sheet to the upper periphery of said reservoir in fluid-tight relationship therewith;

and float means on said sheet spaced inwardly from the upper periphery of said reservoir to raise and lower said sheet on the surface of said liquid as the level thereof varies, with said float means supporting the area of said sheet engaged by said float means at a higher elevation than the portion of said sheet spaced outwardly of said float means and inwardly of said anchor means whereby said portion forms a depending rainwater collection sump."

2. Impleaded as defendants were S & T Construction Company and Firestone Tire and Rubber Company, which supplied materials to S & T. Because all three defendants claimed that the patent was invalid for obviousness we will consider their claims together for purposes of this appeal.

3. Recognized at least as early as 1851 in *Hotchkiss v. Greenwood*, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683 (1851), the nonobviousness re-

district court segregated the issues of patent validity and infringement for trial, found the patent invalid for obviousness, and gave judgment for defendants.

On appeal Globe contends that the district court's finding of obviousness is incorrect. It argues that the statutory presumption of the patent's validity should not have been rejected. It also contends that, even if its invention contained no new elements, the combination of old elements produced an unusual or surprising result not found in the prior art.

## I.

### THE STATUTORY PRESUMPTION

The district court relied on three prior art references, two of which were not considered by the patent office. This raises an initial question of whether appellant was entitled to the statutory presumption of validity. Congress has declared that:

A patent shall be presumed valid. . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

35 U.S.C. § 282 (Supp.1977).

We have held that this "presumption of non-obviousness dissipates upon a showing that the prior art was not brought to the attention of the patent examiner." *Alcor Aviation, Inc. v. Radair Incorporated,* 527 F.2d 113, 115 (9th Cir. 1975); *see also Hewlett-Packard Co. v. Tel-Design, Inc.,* 460 F.2d 625 (9th Cir. 1972). Even one prior art reference not considered by the

patent office may be sufficient to overcome the presumption. *Jaybee Mfg. Corp. v. Ajax Hardware Corp.,* 287 F.2d 228, 229 (9th Cir. 1961).

The Allen patent was among the 10 patents cited as references by the examiner. Its elements included a partially flexible, flat cover with an amount of flexible material larger than the covered surface level to follow the rise and fall of the fluid level.[4] An anchor attached the flexible material to the periphery of the tank in a fluid-tight relationship. The patent also demonstrated that a peripheral anchor with flexible material connected to a float over the liquid will create a peripheral trough.

Two possible prior art references not considered by the examiner were a patent issued to an inventor, Feild, and an Army report discussing an experimental effort, begun in 1943 and terminated around 1965, to devise a system for rapidly building reservoirs with covers.

As to the Army report, we agree with Globe that it cannot be considered as prior art because it was not public information as required by 35 U.S. § 102(a) (1970).[5] Although section 102(a) merely defines prior art as an "invention . . . known or used by others," this provision has been held to mean "only what was known or used publicly or was accessible to the public." *Union Carbide Corp. v. Filtrol Corp.,* 170 USPQ 482, 518 (C.D.Cal.1971), *aff'd* in an unpub. memo. 179 UPSQ 209 (9th Cir. 1973).[6] *See also Carboline Co. v. Mobil Oil*

---

quirement was codified in 1952 as Section 103 of the Patent Act:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

4. In its brief Globe contends that the cover terminated inwardly of the periphery but the district court found otherwise. Because we find substantial evidence to support the court's

finding we treat it as a finding of fact which is not clearly erroneous and adopt it. Fed.R.Civ. Pro. 52(a).

5. Section 102:

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country . . . before the invention thereof by the applicant for [the] patent . . . ."

6. We note that on pages 3–4 of its reply brief appellant represents that this case appears in Federal Supplement and Federal Reporter 2nd Series. We find no such cases at the citations given. Rather, we have found such disposi-

*Corp.*, 301 F.Supp. 141 (N.D.Ill.1969) (work product under a "security" classification).

■ Although the district court was not called upon to decide whether the Army report was public information we note that the document itself contained this language:[7]

> Each transmittal of this document outside the agencies of the U.S. Government must have prior approval of the Commanding General, U.S. Army Materiel Command, Washington, D.C. 20315.
>
>   \*  \*  \*  \*  \*  \*
>
> Destroy this report when no longer needed.

Another section of the report listed the agencies to which the report has been distributed. After our examination of the record, we cannot say that this report falls within the realm of "public information."

■ Because of our holding that the Army report could not be considered as prior art, we must decide whether the Feild patent itself was sufficient to negate the presumption of non-obviousness. The first question is whether the Feild patent was either "less pertinent" than the prior art considered by the examiner, or was merely "cumulative." In either case, the presumption of validity would then be allowed to operate. *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1271 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976).

Globe contends that the Feild patent is less pertinent than the Allen patent because its design contemplates covering the reservoir with a rigid roof, thereby precluding the floating cover beneath from being used to collect rain, unlike the Allen and Dial patents, both of which are open to the rain. It notes that its expert, a patent attorney, testified that the cited Allen patent was

more pertinent than the non-cited Feild patent. The court, however, not the expert, determines which is more pertinent.

■ In certain respects, the record reveals that the Feild patent was more pertinent than the Allen patent. Specifically we note that (1) unlike the Allen patent but like the instant one the cover of the Feild patent consisted almost entirely of a flexible material, and (2) again unlike the Allen patent but like the instant one the float means in the Feild patent consisted of floats near the periphery of the cover as well as in the center, thus confining the liquid on the upper/outer side of the flexible material to a peripheral trough. These features were critical to both the Dial and Feild patents. We therefore find the Feild patent to be pertinent prior art and the failure of the patent examiner to consider it dissipates the statutory presumption of validity.

With a clean slate, we consider the question of obviousness.

## II.

## OBVIOUSNESS

■ In approaching this question, we must inquire whether or not claim 5 of the Dial patent would have been obvious to a person of ordinary skill in the art. This is the determinative test of patentability under section 103. *Saf-Gard Products, Inc.*, *supra* at 1270. We have been directed by the Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), to adopt the following mode of analysis:

> While the ultimate question of patent validity is one of law . . . the § 103 condition . . . lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are

---

tions in U. S. Patent Quarterly. We note that the Court of Appeals' ruling is an unpublished memorandum decision of August 31, 1973. We refer counsel to Ninth Circuit Rule 21(c) which states that a "disposition which is not for publication . . . shall not be cited to this Court in briefs or oral argument." This rule means what it says even when applied to patent cases.

7. Plaintiff's Exhibit 43, "Development of a Hasty Bulk Fuel Storage Reservoir," U.S. Army Engineer Research and Development Laboratories, Fort Belvoir, Virginia, (Dec.1965) (first unnumbered page after the title page).

to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-obviousness of the subject matter is determined.

"Prior art" then plays a fundamental role in our examination of this case. *See* Chisum, "Sources of Prior Art in Patent Law," 52 *Wash.L.Rev.* 1, 3 (1976).

■ An inventor will not be denied a patent simply because his invention embodies a solution which seems simple and obvious with the benefit of hindsight. *National Sponge Cushion Co. v. Rubber Corp.,* 286 F.2d 731, 735 (9th Cir. 1961), *cert. denied,* 368 U.S. 976, 82 S.Ct. 480, 7 L.Ed.2d 438 (1962). The solution must constitute a change in structure, however, not a change in use because a change in use is not a patentable quality unless it is patented as a process.[8]

[A] patent claiming a device that has already been put to use, albeit in a different manner, is invalid; in order to be valid over the prior art, it must claim not novel use, but novel conception.

*Beckman Instruments, Inc. v. Chemtronics, Inc.,* 428 F.2d 55, 561 (5th Cir.), *cert. denied,* 400 U.S. 956, 91 S.Ct. 353, 27 L.Ed.2d 264 (1970), *quoted in Exer-Genie, Inc. v. McDonald,* 453 F.2d 132, 134 (9th Cir. 1971), *cert. denied,* 405 U.S. 1075, 92 S.Ct. 1498, 31 L.Ed.2d 809 (1972).

■ Both the Feild and Allen patents include a float means arranged with a flexible material to form a trough around the edge and the Feild patent uses floats near the periphery in a way very similar to that described in the Dial patent. The major elements of claim 5 of the Dial patent were (1) the continuous sheet of material extending beyond the area of stored liquid, (2) the use of a float means to support the cover and form a fold outwardly from the float means, and (3) the use of a perimeter sump

to collect and remove rainwater. The collection of rainwater in the peripheral sump was accomplished by the raising of the inner floats, thus causing the rainwater to flow downward to the deep peripheral fold or trough.

Because the main significant elements of the Dial patent claim 5 were already found in the prior art, the final inquiry is whether the raising of the height of the inside floats and the use of a pump to drain the water from the trough were obvious. We conclude that they were.

There was testimony by appellant's expert[9] that the Allen patent arrangement would collect rainwater, whether or not that was its stated purpose. The *use* of the trough to collect water was therefore a change in use, not structure. The raising of the inner floats to create a run-off was arguably a change in structure, but the ingenuity required to effect the adaptation was "no more than that to be expected of a mechanic skilled in the art." *Cuno Engineering Corp. v. Automatic Devices Corp.,* 314 U.S. 84, 92, 62 S.Ct. 37, 41, 86 L.Ed. 58 (1941).

■ Because a patentable invention is lacking, secondary considerations such as "commercial success" and "long-felt but unfulfilled needs" cannot fill the gap. *Graham v. John Deere Co.,* 383 U.S. 1, 35–36, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

III.

COMBINATION PATENT

Appellant suggests that the float arrangement of the Dial patent to locate the excess material at the periphery of the reservoir was an unusual or surprising result not found in the prior art. It also makes reference to the ability of the float means to keep the cover from sinking if punctured,

---

8. See footnote 1 in *Exer-Genie, Inc. v. McDonald,* 453 F.2d 132, 133 (9th Cir. 1971), *cert. denied,* 405 U.S. 1075, 92 S.Ct. 1498, 31 L.Ed.2d 809 (1972).

9. Reporter's Transcript at 303.

and to the raising of the inner floats. In so doing, appellant attempts to persuade this court that its invention satisfies the "rather severe test" for patentability of a combination patent. *See Regimbal v. Scymansky*, 444 F.2d 333, 338–39 (9th Cir. 1971). We must therefore decide whether the "whole" of this patent claim exceeds the sum of its parts in an unusual or surprising way.

We hold that it does not, but rather consists only of a combination of ideas which produces results that would be "expected by one of ordinary skill in the art." *Hewlett-Packard Co. v. Tel-Design, Inc.*, 460 F.2d at 629–30.

The judgment of the district court is affirmed.